**UNITED STATES, Appellee,**

v.

**Melvin STONER, Defendant, Appellant.**

**No. 90–1184.**

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1990.

Decided March 5, 1991.

Charles P. McGinty, Federal Defender Office, for defendant, appellant.

Brien T. O'Connor, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge,
COFFIN, Senior Circuit Judge, and
SELYA, Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant Melvin Stoner pleaded guilty to a six-count indictment charging conspiracy to distribute and five counts of distribution of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. The district court sentenced Stoner to a mandatory five-year minimum sentence on Count VI in accordance with 21 U.S.C.

§ 841(b)(1)(B)(viii). On appeal, Stoner contends that the mandatory sentence was improperly applied. We affirm the decision of the district court.

There is no dispute about the volume or nature of the drug involved in this case. The incident charged in Count VI involved the distribution of a total of 82.9 grams of a substance containing methamphetamine packaged in three separate bags, the contents ranging in purity from 32% to 38%. The total methamphetamine contained in the packages was 28.45 grams.

■ Stoner's sole argument is one of statutory interpretation. Under the statute, a minimum mandatory five-year sentence is prescribed for offenses involving:

> 10 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers....

21 U.S.C. § 841(b)(1)(B)(viii). Appellant claims that Congress intended by this language to subject to the mandatory sentence only those who possess 10 grams of "pure" methamphetamine or 100 grams or more of a mixture or substance containing methamphetamine. He argues that the use of the word "or" to distinguish between methamphetamine and mixtures containing methamphetamine necessarily implies that the former may not be found in a mixture. Thus, he asserts that because he had a "mixture," not "pure" methamphetamine, he is not subject to the mandatory sentence because he did not possess more than 100 grams.

Stoner's suggested reading would achieve an anomalous result. Under that reading, for example, an offender possessing 95 grams of the drug, if mixed with 4 grams of baking soda, would not be subject to the mandatory penalty because he would have 99 grams of a "mixture." Yet a second offender, with only 10 grams of pure methamphetamine, would be subject to the penalty, notwithstanding the fact that he had little more than one-tenth of the amount of the first offender.

In the face of such disparity, Stoner points to nothing in the language or history of the statute indicating that Congress intended such an illogical result. The statute does not say "pure" methamphetamine and the statute can be read to have a logical meaning without it. Indeed, the government's proposed reading makes eminent sense and results in no comparable anomaly: an individual is subject to the mandatory sentence if he commits an offense involving either 10 grams of the drug—however it is found—or 100 grams of a mixture containing any detectable amount of the drug, even if that is less than 10 grams. It seems entirely reasonable for Congress to create a mandatory penalty that is triggered by *either* the net quantity of pure methamphetamine *or* the gross quantity of a mixture or substance containing any detectable amount of methamphetamine. *Cf. United States v. Bishop*, 704 F.Supp. 910, 912 (N.D.Iowa 1989) (dicta referring to identically constructed section of statute dealing with PCP); *United States v. Daly*, 883 F.2d 313, 317–18 (4th Cir.1989) (quoting *Bishop*, 704 F.Supp. at 312).[1] Moreover, such an interpretation avoids the inference that Congress intended to offer an inducement to the offender with ten to 99 grams of methamphetamine to add a tiny amount of a dilutant and thereby escape the mandatory penalty.

Stoner, however, argues imaginatively that his proposed irregular reading of the provision is necessary for consistency with the statute's disparate treatment of cocaine and cocaine base drugs. It is true that Congress has chosen to punish offenses involving cocaine base more severely than those involving ordinary cocaine. Because the creation of cocaine base is a simple process, the lighter treatment of an offense involving larger amounts of cocaine not so processed might appear inconsistent with the treatment of an offense involving cocaine base. *Compare* 21 U.S.C.

---

1. To the extent that dicta in *United States v. Skelton*, 901 F.2d 1204 (4th Cir.1990), suggests differently, we disagree. *Id.* at 1205 ("Congress specifically provided for a distinction between pure PCP and a mixture containing PCP.").

§ 841(b)(1)(B)(ii) *with* § 841(b)(1)(B)(iii) (punishing with the mandatory five-year sentence an offense involving 500 grams or more of cocaine while punishing identically an offense involving only 5 grams of cocaine base). But Congress explicitly intended to distinguish "crack" cocaine from other forms because of the extreme potency and addictiveness of the former at lower doses. *See, e.g., United States v. Levy,* 904 F.2d 1026, 1032 (6th Cir.1990). Congress also made that intent apparent on the face of the statute, clearly distinguishing the penalties applicable to cocaine and cocaine base. But no such clear distinction was drawn between "pure" methamphetamine and mixtures and substances containing the drug. Moreover, the different treatments of crack and cocaine correspond with different *forms* of the drug (however easily created), not just different *concentrations.* The fact that Congress intended to create disparate sentences for crack and cocaine, therefore, sheds no light on whether it intended disparate sentences for different concentrations of methamphetamine. We conclude that, rather than supporting his argument, Stoner's comparison with the treatment of cocaine and cocaine base merely underscores the fact that, while Congress clearly could have drawn such a distinction with respect to methamphetamine, it did not do so.

Moreover, Stoner's suggested reading would create a difficult line-drawing task for the courts. As appellant conceded at oral argument, since a drug virtually never is completely pure, some contamination would have to be accepted in that category considered "pure," or the statutory provision punishing possession of 10 grams of "pure" methamphetamine would have no application. And Stoner admits that 10 grams of cocaine containing one speck of a contaminant nonetheless must be considered pure. If one speck of a contaminant is not sufficient to constitute a mixture, are ten? are 100? We find no indication in the statute or the statutory history that would lead us to conclude Congress intended the courts to engage in such a line-drawing process, and we decline to do so.

In a final attempt to persuade, Stoner relies on this court's rule of strict construction of criminal statutes. *See United States v. Anzalone,* 766 F.2d 676, 680 (1st Cir.1985). If a statute is ambiguous, this court must interpret it in favor of the criminal defendant. The rule is based both on fairness to individuals in providing adequate notice and the belief that legislatures and not courts are the appropriate bodies for defining criminal activity. *Id.* at 680–81. But "the 'touchstone' of the rule of lenity 'is statutory ambiguity.'" *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (quoting *Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 920, 63 L.Ed.2d 198 (1980)). "Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent." *Id.* In this case, there is no indication that Congress intended anything other than what it expressly said when it authorized the minimum penalty for possession of either ten grams of the drug itself or 100 grams of a mixture containing any amount of the drug. Appellant's reading would require that we accept without evidence that Congress viewed the pure drug to be qualitatively different from a mixture in some way relevant to sentencing. In the absence of some indication that Congress so intended, we cannot view the suggested reading as presenting true ambiguity. *See United States v. Marshall,* 908 F.2d 1312, 1318 (7th Cir.1990) ("heroic construction" is not reason to disregard unambiguous language). There is no basis, therefore, for invoking the rule of lenity.

We therefore interpret the statute to have intended to punish the possession of either 10 grams of methamphetamine, however found, or 100 grams of a mixture containing any "detectable amount" of methamphetamine.

*Affirmed.*