UNITED STATES of America,
Plaintiff–Appellee,

v.

Mary Chris Brigole ALFECHE,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

William BAUTISTA, Defendant–
Appellant.

Nos. 90–10568, 90–10569.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 15, 1991 *.

Decided Aug. 22, 1991.

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Adrienne S. King, King and King, Alexander Silvert, Asst. Federal Public Defender, Honolulu, Hawaii, for defendants-appellants.

Andrew Levchuk, Appellate Section, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWNING, FARRIS and LEAVY, Circuit Judges.

PER CURIAM:

Co-defendants Mary Alfeche and William Bautista pled guilty to possession of methamphetamine with the intent to distribute. The district judge sentenced defendants to the 10-year minimum provided by 21 U.S.C. § 841(b)(1)(A)(viii) (1988). The defendants argue under the correct interpretation of this statute they did not possess enough methamphetamine to trigger the 10-year minimum. We affirm.

I

The facts are not disputed. Defendants possessed three bags of methamphetamine. Chemical analysis revealed bag 1 contained 30.9 grams of 99% pure methamphetamine hydrochloride, bag 2 contained 21.5 grams of 100% pure methamphetamine hydrochloride, and bag 3 contained 69.5 grams of 97% pure methamphetamine hydrochloride. In total the bags contained 121.9 grams of sample, of which 119.6 grams was methamphetamine hydrochloride and the rest unknown impurities.

21 U.S.C. § 841(b)(1)(B)(viii) provided a 10-year minimum sentence for offenses involving

> 100 grams or more of methamphetamine, its salts, isomers and salts of its isomers or [1 kilogram] or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.[1]

Defendants argue because their methamphetamine was not "pure" methamphetamine hydrochloride, they possessed "a mixture or substance containing" methamphetamine and should have been sentenced to the five-year minimum sentence for offenses involving between 100 and 1000 grams of a methamphetamine mixture. See 21 U.S.C. § 841(b)(1)(B)(viii). Defendants assert section 841 should not be interpreted as allowing "pure" methamphetamine to be extracted from a methamphetamine mixture for the purposes of sentencing.

Like the First Circuit, which rejected the identical argument in *United States v. Stoner*, 927 F.2d 45 (1st Cir.1991), we find nothing in the language or history of section 841 to suggest Congress intended the absurd results possible under this construction. Under the defendants' proposed interpretation, a person possessing hundreds of grams of methamphetamine would avoid the 10-year minimum sentence if the methamphetamine was mixed with a few grams of something else. There is no indication Congress intended possession of a methamphetamine mixture to be treated so differently than possession of "pure" methamphetamine. *Cf. United States v. Levy*, 904 F.2d 1026, 1032 (6th Cir.1990) (noting Congress intended possession of cocaine base to be treated differently than possession of

---

1. Although the statute in effect at the time said "100 grams," not "1 kilogram", defendants and the government agree this was just a typographical error and has no relevance to this case. It has been corrected by Congress. Pub.L. No. 101–647, § 1202, 104 Stat. 4789, 4830 (1990).

cocaine because of the special dangers of "crack" cocaine).

In contrast, interpreting section 841 to require a 10–year minimum for crimes involving *either* a net amount of 100 grams of methamphetamine hydrochloride *or* 1000 grams of a methamphetamine mixture is consistent with the language of the statute and avoids absurd results. Such an approach is taken by the Sentencing Guidelines, which provide:

> In the case of a mixture or substance containing PCP or methamphetamine, use the offense level determined by the entire weight of the mixture or substance or the offense level determined by the weight of the pure PCP or methamphetamine, whichever is greater.

U.S.S.G. § 2D1.1(c) (Nov. 1, 1990) (footnote at 2.47).

This interpretation of section 841 also relieves the courts from deciding how "pure" methamphetamine must be to trigger the "methamphetamine" prong of the statute, instead of the "methamphetamine mixture" prong. This case, in which defendants possessed three bags of methamphetamine with varying purities, suggests the difficulties such line-drawing would create.

## II

As a fallback position, defendants argue if section 841 is ambiguous, a "rule of lenity" must be applied to give them the lesser sentence. However, as the Supreme Court recently stated:

> Because the meaning of language is inherently contextual, we have declined to deem a statute ambiguous for purposes of lenity merely because it was *possible* to articulate a construction more narrow than that urged by the government.... Instead, we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history and motivating policies of the statute.... [A] court should rely on lenity only if, after seizing every thing from which aid can be derived, it is left with an ambiguous statute....

*Moskal v. United States*, —— U.S. ——, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (citations and quotation marks omitted, emphasis in original).

Defendants offer no indication Congress intended their interpretation of section 841. The interpretation urged by the government, which we adopt, avoids absurd results and is consistent with the language of the statute and the approach taken by the Sentencing Guidelines. We find no ambiguity requiring lenity.

AFFIRMED.