**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Genoveva ASUNCION, Defendant–**
**Appellant.**

**No. 90–10594.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1991.

Decided Aug. 24, 1992.

Thomas W. Murphy, Rustam Barbee, Asst. Federal Public Defenders, Honolulu, Hawaii, for defendant-appellant.

Michael Kawahara, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before: GOODWIN, SKOPIL and NOONAN, Circuit Judges.

GOODWIN, Circuit Judge:

Genoveva Asuncion appeals her conviction for importation of and possession with intent to distribute methamphetamine, and conspiracy to do the same. She has raised a number of challenges to her conviction and sentencing. We affirm in part, reverse in part, and remand.

On October 8, 1989, hotel maid and mother of four Genoveva Asuncion drove to the home of Rolando Gaoiran in Waipahu, Hawaii. Gaoiran, a social acquaintance of Asuncion's, gave Asuncion $1000 in cash for Asuncion to purchase a return ticket to the Philippines. Asuncion left Honolulu for Manila on October 13. She stayed in Manila for three days, visiting, among others, her friends Anita Pagdilao and Josephine Baligad. Before leaving Manila, Pagdilao gave Asuncion two boxes with instructions to deliver them to Gaoiran in Honolulu. Pagdilao instructed Asuncion not to open the boxes.

Asuncion returned to Honolulu at 9:00 a.m. on October 16. In the bottom of the two boxes Asuncion was bringing back from the Philippines, customs agents discovered two margarine containers. Underneath layers of margarine, the agents discovered 906.2 grams of a substance, 779.9 grams of which consisted of pure methamphetamine. Asuncion was arrested and advised of her *Miranda* rights.

After her arrest, Asuncion agreed to cooperate with agents of the Drug Enforcement Administration (DEA). After Asuncion participated in a controlled delivery of the boxes, the agents placed her in small, spartan DEA office at the airport known among the agents as the "cave." At 11:00 a.m., Asuncion signed a document which purported to waive her *Miranda* rights. Some time before 3:00 p.m., Asuncion was given food to eat and at 3:45 p.m., Asuncion signed a statement. This first statement described generally the circumstances of her trip to the Philippines but made no mention of the methamphetamine. At this time, Asuncion expressed concern for the welfare of her children and asked the agents if she could telephone them. The

agents refused on the ground that this might prejudice the on-going investigation.

During the afternoon, DEA agents were busy obtaining search warrants for the homes of Asuncion, Baligad, and Gaoiran. By 6:15 p.m., the warrants had been issued and the agents spent the evening executing the searches. Asuncion accompanied the agents to Baligad's house but remained in a parked car while the search was executed. At all other times, Asuncion was confined to the cave.

The agents returned to the cave after midnight on the morning of the 17th after all searches had been completed. The interrogation of Asuncion resumed and at 3:50 a.m., Asuncion signed a second statement. In this statement, Asuncion mentioned that she had suspected that the boxes contained methamphetamine. Asuncion claimed that she had asked Pagdilao and Josephine Baligad whether this was so. Baligad denied it but Pagdilao told Asuncion that she would be killed if she mentioned the transaction to anyone.

Asuncion was brought to trial on charges of importation of and possession with intent to distribute methamphetamine, and conspiracy to do the same under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846, 952(a), 960(b)(3), 963. Asuncion was convicted and sentenced to 10 years imprisonment under 21 U.S.C. § 841(b)(1)(A)(viii). She timely appealed.

On appeal, Asuncion argues that reversal is mandated because the district court failed to suppress her second confession, because the district court improperly instructed the jury, and because of prosecutorial misconduct. Asuncion further charges that errors occurred in her sentencing under the sentencing guidelines and under 21 U.S.C. § 841(b)(1)(A)(viii).

I. *The Inculpatory Statement*

Asuncion argues that the district court erred by failing to suppress her second statement to the DEA agents. She bases her argument on two grounds. First, she charges that her waiver of *Miranda* rights two hours after her arrest was neither knowingly nor voluntarily made. Second, she claims that, even if the waiver was valid, her second statement was inadmissible because it was obtained as a product of unreasonable delay in bringing her before a magistrate and because it was involuntarily made. Finally, she argues that admission of her second statement was not harmless error.

A. Validity of the Waiver

■ Asuncion argues that the district court erred in finding that her 11:00 a.m. waiver of *Miranda* rights was voluntarily and knowingly made. This argument fails because Asuncion has not demonstrated that the district court's findings concerning the *Miranda* waiver were clearly erroneous. *United States v. Doe*, 819 F.2d 206, 209 (9th Cir.1985).

B. Unreasonable Delay

Asuncion next argues that, even if the 11:00 a.m. waiver was valid, the 4:00 a.m. confession should have been suppressed due to unreasonable delay and because it was involuntarily made. In federal criminal trials, 18 U.S.C. § 3501 (1988) governs the handling of challenges to the admissibility of confessions. According to section 3501(a), a statement is admissible if it is voluntarily given. Section 3501(b) requires that, in determining voluntariness, the trial judge "shall" consider all circumstances surrounding the confession including five specified items. The first of those items concerns the delay between arrest and arraignment if the confession was made between them.

■ In this case, there was a 19 hour delay between the time of the arrest and the time of the second statement and a 17 hour delay between the time of Asuncion's *Miranda* waiver and the second statement. The record in this case reveals no consideration by the trial judge of this delay's effect, if any, upon the voluntariness of Asuncion's second statement. Nor does it reveal any findings concerning the reasonableness of the delay as required by section 3501(c). A valid *Miranda* waiver does not automatically validate a confession made

17 hours later. *See United States v. Wilson,* 838 F.2d 1081, 1087 (9th Cir.1988). Accordingly, we remand this case for consideration of the delay factor in accordance with section 3501. *See United States v. Keeble,* 459 F.2d 757, 761 (8th Cir.1972), *rev'd on other grounds,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

On appeal, the government argues that Asuncion's second statement was properly admitted. The government does not, however, challenge Asuncion's argument that if it was error to admit the second statement, that error was not harmless. Indeed, Asuncion's second statement is the lynchpin of the government's case. The following analysis considers Asuncion's remaining arguments with the assumption that Asuncion's second statement was properly admitted. This analysis will become relevant should the trial court find on remand that the delay factor did not affect the voluntariness of the second statement.

## II. *The Conscious Avoidance Jury Instruction*

Asuncion argues that the district court erred in giving a "conscious avoidance" instruction to the jury. We review de novo whether such an instruction should have been given. *United States v. Sanchez–Robles,* 927 F.2d 1070, 1073 (9th Cir.1991).

■ The "conscious avoidance" instruction is appropriate when the facts and circumstances surrounding the crime created a high probability of criminal activity that the defendant consciously ignored. *Id.* *See United States v. Jewell,* 532 F.2d 697 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). The instruction is not appropriate when the evidence suggests that the defendant either has actual knowledge or had no knowledge at all. *Sanchez,* 927 F.2d at 1074. For example, in *Sanchez,* the defendant's van reeked of marijuana. The court concluded that either she recognized the smell and knew she was carrying marijuana or she didn't recognize it and did not know the contents of her cargo.

■ In this case, Asuncion was asked to carry two packages to the United States under very suspicious circumstances. In her second statement to DEA agents, she acknowledged that she had suspected that the packages contained methamphetamine but chose not to open them. Accordingly, the trial judge did not err in giving the jury a "conscious avoidance" instruction.

## III. *The Coercion Defense*

■ Asuncion argues that the district court erred when it refused to instruct the jury on her coercion or duress defense. A defendant is entitled to an instruction on the defense of duress only where the defendant makes a prima facie showing of the elements constituting the defense. *United States v. Jennell,* 749 F.2d 1302, 1305 (9th Cir.1984), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). Whether the defendant has made the requisite showing is a question of law to be reviewed de novo. *United States v. Williams,* 791 F.2d 1383, 1388 (9th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986).

The elements of a duress defense are: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." *Jennell,* 749 F.2d at 1305. Underlying these elements is the implicit requirement that the defendant would not have engaged in the conduct were it not for the threat. *United States v. Atencio,* 586 F.2d 744, 746 (9th Cir.1978).

■ In this case, Asuncion voluntarily travelled to the Philippines and voluntarily agreed to bring the boxes back to the United States. The threats she alleges concerned what would happen if Asuncion "said anything or told anyone" about the transaction. Asuncion does not claim that she would not have imported the boxes were it not for the threats. Accordingly, the district court did not err in refusing to instruct the jury on the defense of duress.

## IV. *Prosecutorial Misconduct*

■ Asuncion argues that the government prosecutor prejudiced her case by im-

properly vouching for his witnesses during closing argument. However, even assuming the prosecutor's statements were improper, they do not require reversal because they were harmless beyond a reasonable doubt. *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir.1989). In this case, the prosecutor's alleged vouching went to the credibility of the DEA agents. That credibility was irrelevant to the government's principal pieces of evidence: Asuncion's second statement; her association with methamphetamine dealers; the suspicious circumstances of the trip. This evidence renders any error harmless.

### V. *Computation of the Sentence Under the Sentencing Guidelines*

█ Asuncion argues that the district court improperly failed to make findings on her request for downward adjustments under § 3B1.2 and § 3E1.1. Asuncion cites *United States v. Wells*, 878 F.2d 1232 (9th Cir.1989) and *United States v. Carlisle*, 907 F.2d 94 (9th Cir.1990) in support of her argument. Neither case is apposite. In both, findings as to adjustments under the guidelines were relevant to the eventual sentence. In this case, because the statutory minimum sentence was greater than the relevant sentencing guideline range, the guideline range did not apply. U.S.S.G. § 5G1.1(b). Accordingly, findings under the guidelines were irrelevant.

### VI. *Sentences for "Mixtures" and for "Pure" Substances*

█ Finally, Asuncion argues that, in sentencing her, the district court misinterpreted 21 U.S.C. § 841(b)(1)(A)(viii). In the alternative, Asuncion argues that this section is ambiguous and that the rule of lenity requires an interpretation in her favor.

These arguments were disposed of in *United States v. Alfeche*, 942 F.2d 697, 698–99 (9th Cir.1991). In *Alfeche*, this court held that section 841 allows "pure" methamphetamine to be extracted from a methamphetamine mixture for the purpose of sentencing. *Id.*

The evidence in this case shows that Asuncion imported 906.2 grams of a substance which contained 779.9 grams of pure methamphetamine. Because this amount is over 100 grams, § 841(b)(1)(A)(viii) was properly applied.

### VII. *Conclusion*

Because the district court failed to make the analysis required by 18 U.S.C. § 3501 in connection with the delay in taking the defendant before a magistrate, the court on remand should decide whether the delay affected the voluntariness of the defendant's second statement. The judgment is vacated, the cause is remanded for findings and conclusions on the single issue with respect to the admissibility of the second statement. If the district court finds that the delay had no effect on the voluntariness of the statement, a new trial is not necessary. If the court finds that the second statement was tainted by the delay, the case must be retried with the second statement excluded. Any further appeal will be returned to this panel.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.