990 F.2d 1258
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John Allen JACKSON, Petitioner-Appellant,
v.
J.M. RATELLE, Warden and Dan Lungren, Attorney General,
Respondents-Appellees.
 No. 92-56022.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 9, 1993.*
Decided April 12, 1993.
 
 1
 Before NOONAN and LEAVY, Circuit Judges, and FITZGERALD,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 John Allen Jackson (Jackson), a California state prisoner, appeals pro se the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. In his petition, Jackson challenges his state conviction for second degree murder in the death of Latrice Osborne (Osborne) on the basis of ineffective assistance of counsel and prosecutorial misconduct. Jackson is currently serving a sentence of 15 years to life.
 
 I. Prosecutorial Misconduct
 
 4
 Prosecutorial misconduct warrants habeas relief only where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). See also Hall v. Whitley, 935 F.2d 164, 165 (9th Cir.1991).
 
 
 5
 Jackson contends that it was misconduct for the prosecutor to introduce electrophoretic evidence without application of the so-called "Kelly/Frye " rule. See People v. Kelly, 130 Cal.Rptr. 144 (1976); Frye v. United States, 293 F. 1013 (D.C.Cir.1923). However, defense counsel failed to make a Kelly/Frye motion, or to raise any other objection to this evidence. Thus, Jackson waived this issue on appeal. People v. Kaurish, 276 Cal.Rptr. 788, 807-08 (1990) (en bank), cert. denied, 112 S.Ct. 121 (1991)[1].
 
 
 6
 Jackson next contends that prosecutorial misconduct occurred because, in his closing argument, the prosecutor referred to facts not in evidence in that he stated blood was found on the trunk latch of Jackson's car and "persuaded" the jury that the white stain on the floor of Jackson's auto repair garage was caused by cleanser Jackson used to wash away Osborne's blood. These comments, however, did not exceed the wide latitude given prosecutors to discuss and draw inferences from evidence presented at trial. United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991); Kaurish, 276 Cal.Rptr. at 800. As such, they cannot support Jackson's claim of prosecutorial misconduct.
 
 
 7
 Lastly, Jackson contends the prosecutor inflamed the jury in his closing argument by stating, among other things, that Jackson killed Osborne because "he had the idea who in heaven's name is going to care she's just one more dead swat, one more dead prostitute" and that Jackson "dumped that poor girl's body on the freeway." Even if the prosecutor's statements were improper, they do not require reversal if they were harmless beyond a reasonable doubt. United States v. Asuncion, 973 F.2d 769, 773 (9th Cir.1992), citing United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir.1989), cert. denied, 113 S.Ct. 419 (1992). We cannot say that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." See Darden, 477 U.S. at 181; Hall, 935 F.2d at 165.
 
 
 8
 The district court did not err in dismissing Jackson's claim of prosecutorial misconduct.
 
 II. Ineffective Assistance of Counsel
 
 9
 To prevail on his claim for ineffective assistance of counsel, Jackson must show that his counsel made unprofessional errors and that, but for such errors, it is reasonably probable that Jackson would have received a more favorable result. See Strickland v. Washington, 466 U.S. 668, 694 (1984). Our review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment. Id. at 690.
 
 
 10
 Jackson contends trial counsel, Joy L. Wilensky (Wilensky), was ineffective in that she failed to investigate four components of the prosecution's case: namely, (a) the inability of the trunk latch on Jackson's 1974 Mercury cougar X-R-7 to inflict the abdominal injury on Osborne's body; (b) the fact that the chemical orthotolidine reacts not only to human blood, but also to rust, paint, iodine, etc.; (c) the likelihood that battery acid spilled on the concrete in Jackson's auto repair garage caused the white stains found on that floor, not cleanser used by Jackson to wash away Osborne's blood; (d) the inaccuracy of Detective Harold Rhudy's (Rhudy's) testimony that there were only two traffic signals from the Venice Pier to the end of the marina freeway; and (e) the mileage along that route.
 
 
 11
 Wilensky obtained the appointment of an independent criminologist, Bio-Technics Laboratories, Inc. (Bio-Technics), to test blood and saliva samples taken from Jackson and Lloyd Skannal (Skannal), Osborne's pimp and common law husband, and blood samples taken from both Osborne and Jackson's car. Wilensky did not pursue the matter after Bio-Technics reported their findings corroborated those of the police experts. We do not find Wilensky's performance ineffective. See Kaurish, 276 Cal.Rptr. at 808. Even assuming deficient performance, Jackson fails to demonstrate how any of the above would have changed the outcome of his case. He thus has not demonstrated prejudice. See id.
 
 
 12
 Jackson next claims Wilensky's performance was ineffective in that, despite his identification of several witnesses, Wilensky failed to interview any of them. Jackson contends these witnesses could have supported his assertion that Osborne left his garage with a man in a brown cadillac and might have been able to identify that man. However, none of the individuals identified would have testified they saw Osborne leave with the man in the brown cadillac. Thus, their testimony would not have assisted Jackson.
 
 
 13
 Third, Jackson contends his counsel was inadequate in that, despite the fact that the samples tested were so small that only one test was made by the prosecution, Wilensky did not object to the introduction nor admission of electrophoretic evidence nor request a Kelly/Frye hearing regarding the admissibility of that evidence. See People v. Brown, 230 Cal.Rptr. 834 (1985). Jackson does not contend the evidence was false or inaccurate nor does he challenge the qualification of the prosecution's expert, Lee Mann (Mann), a chemist/criminalist with the Los Angeles Police Department. See People v. Morris, 279 Cal.Rptr. 720, 752 (defendant did not allege any specific defect in technique either in general or as applied in his case), cert. denied, 112 S.Ct. 421 (1991).
 
 
 14
 Ratelle contends Jackson's claim has been rendered moot by the California Supreme Court's decision in People v. Reilly, 242 Cal.Rptr. 496, 499-513 (1987), which found that electrophoretic evidence had gained general acceptance in the scientific community. Thus, Ratelle argues, to remand this case to the trial court for a Kelly/Frye hearing would be pointless. See People v. Smith, 263 Cal.Rptr. 678, 682 (1989), rev. denied, 1990 Cal. LEXIS 55 (1990). We agree.
 
 
 15
 Moreover, were we to reach the merits of Jackson's claim, we would uphold the district court's dismissal of that claim. The reasons for Wilensky's failure to neither object to the introduction of the electrophoretic evidence nor request a Kelly/Frye hearing are not developed by either of the parties. However, in Kaurish, a case similar to this in that it presented a combination of prosecutorial misconduct and ineffective assistance of counsel claims surrounding the admission of electrophoretic evidence in a murder trial without a Kelly/Frye hearing, the Court noted that, prior to 1983, the admissibility of electrophoretic evidence in stain analysis was not questioned by courts in California and elsewhere. 276 Cal.Rptr. at 809 n. 5. Jackson was tried in late 1984. While a close question, we find that "[w]hatever the ultimate wisdom of [counsel's] strategic decision, it was not so unreasonable as to deprive defendant of his constitutional right to counsel." Id. at 809. Moreover, even if deficient performance were found and it were probable that Jackson would have succeeded in excluding the electrophoretic evidence, there is no reasonable probability that the outcome of the case would have been different. While circumstantial, the evidence against Jackson was strong.
 
 
 16
 Finally, Jackson contends he received ineffective assistance of counsel because trial counsel requested a manslaughter instruction. The district court, like the California appellate court, found there was no evidence warranting such an instruction. We agree. However, while difficult to follow, Jackson's argument appears not to be that the request for such an instruction rendered Wilensky's performance inadequate. Jackson contends he "steadfastly" denied any involvement in the crime. He claims Wilensky suggested to the jury that he committed the crime when she questioned Detective Rhudy about Osborne's propensity for violence in order to lay a foundation for a manslaughter defense--e.g., that Osborne's death resulted from a "heat of passion or sudden quarrel situation." Jackson did not raise this specific argument below. Nonetheless, we reject it. A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel. Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1984).
 
 
 17
 The district court did not err in dismissing Jackson's claim for ineffective assistance of counsel.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 A close reading of Jackson's claim reveals it is mislabeled as one for prosecutorial misconduct. Specifically, Jackson argues the admission of the electrophoretic evidence without a Kelly/Frye hearing denied him his right to due process. This claim suggests the trial court had a duty to sua sponte raise a Kelly/Frye objection or hold a Kelly/Frye hearing. This argument has been rejected by the Supreme Court of California. Kaurish, 276 Cal.Rptr. at 808