**UNITED STATES of America, Plaintiff,**

v.

**Keota WILLIAMS, Defendant.**

**Criminal No. 2:95–00152–01.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 9, 1996.

John C. Parr, Assistant U.S. Attorney, Charleston, WV, for plaintiff.

Robert N. Bland, Bland & Bland, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

At sentencing held February 6, 1996 both Defendant and the Government objected to certain proposed findings of the presentence investigation report, contesting whether the weight of the methamphetamine (actual) or the total weight of the mixture containing methamphetamine would operate to implicate the five (5) year mandatory minimum penalty under 21 U.S.C. § 841(b)(1)(B). The Court OVERRULED the objections and adopted the proposed findings and recommendations of the report. The Court found and concluded *either* measure of weight could trigger the application of the statutory mandatory minimum penalty. The Court imposed the mandatory minimum penalty and sentenced Ms. Williams to five (5) years in prison.[1] This Memorandum Opinion and Order further explicates and memorializes that ruling.

---

**1.** The Defendant's marginally lesser exposure under the Guidelines was fifty-seven to seventy-one (57–71) months.

## FACTUAL BACKGROUND

On August 30, 1995 the Defendant and Gregory Jett approached a cooperating individual ("CI") to purchase three (3) ounces of methamphetamine. On August 31, 1995 Mr. Jett delivered Four Thousand Nine Hundred Fifty Dollars ($4,950.00) to the CI for the drug transaction. Previously, law enforcement officials recorded several conversations between Mr. Jett and the CI in which Jett sought to purchase the methamphetamine.

On September 7, 1995 West Virginia State Police officers arranged for surveillance of a trailer park to monitor and record the drug transaction. Mr. Jett and the Defendant met the CI at the trailer park. The CI placed a garbage bag with the requested three (3) ounces of methamphetamine on an outdoor picnic table. Before either could secure possession of the bag, both Mr. Jett and the Defendant were arrested.

Defendant then consented to an inventory search of her vehicle, which was parked approximately fifteen (15) to twenty-two (22) feet from the picnic table. Found in the vehicle were two loaded .380 semi-automatic pistols. One pistol was located in the console between the driver and passenger seats. The other was discovered in the glove compartment. At sentencing, Defendant testified the firearm in the glove compartment belonged to Mr. Jett and the remaining firearm belonged to her. Defendant did not have a permit for either weapon.

Defendant pled guilty to a single-count information charging her with aiding and abetting the possession with the intent to distribute methamphetamine. 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

A laboratory analysis of the controlled substance revealed it weighed eighty-six and two tenths (86.2) grams[2] and contained twenty-seven and one-half percent (27.5%) methamphetamine. The presentence investigation report opined the purity of street methamphetamine sold in this area of West Virginia usually varies from approximately twenty-five percent (25%) to ninety-six percent

(96%) pure. The parties conceded the historical accuracy of the opinion and the Court adopted the proffer in its findings.

## DISCUSSION

A violation of 21 U.S.C. § 841(a)(1) carries a mandatory minimum penalty of five (5) years for offenses involving:

"10 grams or more of methamphetamine, its salts, isomers, and salts of its isomers *or* 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers . . ."

21 U.S.C. § 841(b)(1)(B)(viii) (emphasis added). Comparatively, the Sentencing Guidelines provide a base offense level of twenty-six (26) for a violation of 21 U.S.C. § 841(a)(1), which involves "[a]t least 100 G but less than 400 G of Methamphetamine, *or* at least 10 G but less than 40 G of Methamphetamine (actual) . . . ." United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(c)(7) (Nov.1995) (emphasis added). The Guidelines provide a base offense level of twenty-four (24) for such a violation which involves "[a]t least 80 G but less than 100 G of Methamphetamine, *or* at least 8 G but less than 10 G of Methamphetamine (actual) . . . ." U.S.S.G. § 2D1.1(c)(8) (emphasis added). The Notes to Drug Quantity Table further explain:

"[t]he terms 'PCP (actual)' and 'Methamphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual) or methamphetamine (actual), *whichever is greater."*

U.S.S.G. § 2D1.1(c), comment. (n.B) (Notes to Drug Quantity Table) (emphasis added).

2. The weight of the mixture was 1.15 grams greater than the three (3) ounces requested by the Defendant and Jett.

**1344**

Here, the weights involved are 23.705 grams of methamphetamine (actual) or 86.2 grams of a mixture containing methamphetamine. Under the Guidelines, these weights would result in base offense levels of twenty-six (26) and twenty-four (24), respectively. Following the Guidelines' instruction, the Court would employ the greater base offense level of twenty-six (26).

The statute does not contain the "whichever is greater" instruction of the Guidelines. The statute provides the presence of "10 grams or more of methamphetamine ... *or* 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine ..." shall trigger the mandatory minimum five (5) year sentence. 21 U.S.C. § 841(b)(1)(B)(viii) (emphasis added). The question facing the Court is whether the statutory mandatory minimum penalty of 21 U.S.C. § 841(b)(1)(B)(viii) is triggered by the actual methamphetamine weight *or* by the total weight of a mixture containing methamphetamine, or by the possession of either.

Because this is a question of first impression in our Circuit, the Court looks to other appeals courts for guidance. The First, Ninth and Eleventh Circuits have considered the issue under *nearly identical facts. See United States v. Stoner,* 927 F.2d 45 (1st Cir.), *cert. denied,* 502 U.S. 840, 112 S.Ct. 129, 116 L.Ed.2d 96 (1991); *United States v. Alfeche,* 942 F.2d 697 (9th Cir.1991); *United States v. Frazier,* 28 F.3d 99 (11th Cir.1994) (per curiam); *compare United States v. Carroll,* 6 F.3d 735 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994) (court relied upon the holdings of *Stoner* and *Alfeche* by analogy to support a different issue). These Courts each concluded the presence of *either* weight invokes the application of the statutory mandatory minimum penalty.

In *United States v. Stoner, supra,* the Defendant was charged with the distribution of a total of 82.9 grams of a substance containing methamphetamine packaged in three separate bags. The contents ranged in purity from thirty-two percent (32%) to thirty-

eight percent (38%). The total methamphetamine contained in the packages was 28.45 grams. The district court sentenced the defendant to the mandatory minimum penalty of five (5) years in accordance with 21 U.S.C. § 841(b)(1)(B)(viii).

On appeal, the defendant challenged the district court's interpretation of the statute in applying the mandatory minimum penalty. Defendant argued Congress only intended the mandatory minimum penalty for those defendants who possessed ten (10) grams of "pure" methamphetamine *or* one hundred (100) grams or more of a mixture containing methamphetamine. He argued Congress' use of the word "or" to distinguish between methamphetamine and mixtures containing methamphetamine necessarily implied "pure" methamphetamine could not be found in a mixture. Thus, he asserted because he had a "mixture," not "pure" methamphetamine, he was not subject to the mandatory minimum penalty because he did not possess more than one hundred (100) grams of that mixture.

The Court of Appeals for the First Circuit rejected the argument and stated:

"In this case, there is no indication that Congress intended anything other than what it expressly said when it authorized the minimum penalty for possession of either ten grams of the drug itself or 100 grams of a mixture containing any amount of the drug.... We therefore interpret the statute to have intended to punish the possession of either 10 grams of methamphetamine, however found, or 100 grams of a mixture containing any 'detectable amount' of methamphetamine."

927 F.2d at 47. "[S]uch an interpretation avoids the inference that Congress intended to offer an inducement to the offender with ten to 99 grams of methamphetamine to add a tiny amount of a dilutant and thereby escape the mandatory penalty." *Id.* at 46.

The court found support for its holding from analogous cases from the Fourth Circuit.[3] *Id.* at 46 (citing *United States v. Bish-*

3. The court also disagreed with a case from the Fourth Circuit. In a footnote, the court stated:

"[t]o the extent that dicta in *United States v. Skelton,* 901 F.2d 1204 (4th Cir.1990) [(per curiam)], suggests differently, we disagree.

*op*, 704 F.Supp. 910, 912 (N.D.Iowa 1989), *aff'd*, 894 F.2d 981 (8th Cir.1990) (dicta referring to the express statutory language of the identically constructed portion of statute dealing with PCP; "Congress provided ... for the imposition of penalties involving PCP to be driven by either the quantity of pure PCP or the quantity of a mixture or substance containing a detectable amount of PCP...."); and *United States v. Daly*, 883 F.2d 313, 317–18 (4th Cir.1989), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990) (dicta quoting *Bishop*, 704 F.Supp. at 912)).

Likewise, the Court of Appeals for the Ninth Circuit rejected an argument identical to that in *Stoner*. *United States v. Alfeche*, 942 F.2d 697 (9th Cir.1991). In *Alfeche*, the defendants were convicted of possessing one hundred twenty-one and nine tenths (121.9) grams of a substance containing methamphetamine. The actual weight of the methamphetamine was one hundred nineteen and six tenths (119.6) grams. Based upon the actual weight of methamphetamine, the district court sentenced the defendants to the ten (10) year mandatory minimum penalty.[4]

On appeal, the defendants argued they possessed a mixture containing methamphetamine, not "pure" methamphetamine, and should not be subject to the ten (10) year mandatory minimum penalty. The defendants maintained they were only subject to the five (5) year mandatory minimum penalty under 21 U.S.C. § 841(b)(1)(B)(viii) for offenses involving "100 grams or more of a mixture or substance containing a detectable amount of methamphetamine...."

Rejecting the argument, the Court of Appeals found support from the rationale and holding of *Stoner*.

"Like the First Circuit, which rejected the identical argument in *United States v. Stoner*, 927 F.2d 45 (1st Cir.1991), we find nothing in the language or history of section 841 to suggest Congress intended the absurd results possible under [the defendants' proposed] construction ... [I]nterpreting section [841(b)(1)(A) ] to require a 10-year minimum for crimes involving either a net amount of 100 grams of methamphetamine hydrochloride or 1000 grams of a methamphetamine mixture is consistent with the language of the statute and avoids absurd results."

*Id.* at 698–99.

Similarly, a defendant convicted of possessing four hundred forty-one (441) grams of a substance which contained thirty-seven percent (37%) methamphetamine challenged the district court's imposition of the twenty (20) year mandatory minimum penalty.[5] *United States v. Frazier*, 28 F.3d 99 (11th Cir.1994) (per curiam). The actual weight of the methamphetamine was one hundred sixty-three (163) grams. Again, the defendant argued the mandatory minimum penalty was not implicated because he possessed a mixture that weighed less than one (1) kilogram. Relying upon *Stoner*, the Court of Appeals rejected defendant's argument and held, " '100 grams of methamphetamine,' as used in 21 U.S.C. § 841(b)(1)(A)(viii), refers to 100 grams of the drug however it is found." *Frazier*, 28 F.3d at 101.

Given the purity of methamphetamine in this area of West Virginia ranges from twenty-five percent (25%) to ninety-six (96%), it is reasonably foreseeable to a purchaser, a willing participant who desires to purchase a certain quantity of methamphetamine and who then purchases, that it is as likely he or she may buy a mixture at the lower end of the purity range as it is that it will approach

---

*Id.* at 1205 ('Congress specifically provided for a distinction between pure PCP and a mixture containing PCP.')."

*Stoner*, 927 F.2d at 46 n. 1. However, this Court does not believe *Skelton* conflicts to any degree with the rule enunciated in *Stoner*.

4. The statute provides a ten (10) year minimum sentence for possession with the intent to distribute "100 grams or more of methamphetamine ... or 1 kilogram or more of a mixture or substance containing a detectable amount of

methamphetamine...." 21 U.S.C. § 841(b)(1)(A)(viii).

5. The statute provides a twenty (20) year mandatory minimum penalty for possession with the intent to distribute "100 grams or more of methamphetamine ... or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine ..." if the possessor commits the violation after a prior conviction for a felony drug offense has become final. 21 U.S.C. § 841(b)(1)(A)(viii).

a high level of purity. Thus, it is reasonably foreseeable to a purchaser who intended to purchase "ounces" that he or she would be subject to a mandatory minimum penalty under the statute.

Here, the Defendant requested three (3) ounces of what is sold locally as methamphetamine. She received slightly more than three (3) ounces of a mixture containing methamphetamine at a level of twenty-seven and one-half percent (27.5%) purity. The Court finds and concludes it is reasonably foreseeable the Defendant intended to purchase the mixture of methamphetamine at this level of purity, thereby exposing herself to the mandatory minimum penalty.[6]

The Court agrees with and adopts the rationale and holding of *United States v. Stoner, supra.* Accordingly, the Court concludes the mandatory minimum penalty under 21 U.S.C. § 841(b)(1)(B)(viii) may be triggered by possession of either "10 grams or more of methamphetamine" or "100 grams or more of *a mixture or substance containing a detectable amount of methamphetamine.*"

---

**6.** Under the facts of this case, the Court does not consider it significant that the methamphetamine mixture involved in the purchase was supplied by the Government. The results might have been different, however, had the CI or the Government determined as a precondition to sale the amount to be sold.