UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4634

NEWTON COCKERILL, a/k/a Poochie,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-98-524-DWS)

Submitted: May 16, 2000

Decided:  June 28, 2000

Before MICHAEL, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Parks N. Small, Federal Public Defender, Columbia, South Carolina,
for Appellant. J. Rene Josey, United States Attorney, Jane B. Taylor,
Assistant United States Attorney, Columbia, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Newton Cockerill appeals the 200-month sentence imposed by the district court after his guilty plea to conspiracy to possess methamphetamine with intent to distribute, 21 U.S.C.A.§ 846 (West 1999) (Count One), and distribution of methamphetamine, 21 U.S.C.A. § 841(a) (West 1999) (Count Seven). Cockerill contends that the district court plainly erred in using the base offense level for one to three kilograms of "actual" methamphetamine rather than the level for a methamphetamine mixture, see U.S. Sentencing Guidelines Manual § 2D1.1(c) (1998). He further claims that the court both plainly erred and violated the Ex Post Facto Clause by using the 1998 Guidelines Manual in sentencing him. Cockerill has also requested leave to file a pro se supplemental brief.**1** We now grant his motion to submit a supplemental brief. Having considered all the issues raised, and finding no error, we affirm the sentence imposed by the district court.

In February 1998, Cockerill helped an informant buy sixty grams of methamphetamine from Thomas Secor. Cockerill was later charged with participating in a methamphetamine conspiracy with Secor, Anderson Benenhaley, and others, from 1994 to 1998, and with the February 1998 distribution of methamphetamine to the informant. Cockerill pled guilty in October 1998. As required by his plea agreement, he took a polygraph test in April 1999 in which he denied any involvement with a purchase of methamphetamine in California by Benenhaley and Secor in July 1996. The test results indicated that Cockerill had been deceitful. After the test, Cockerill was interviewed by two federal agents and admitted that he had a part in the California methamphetamine purchase. Subsequently, Secor testified at Benenhaley's trial that, in July 1996, Cockerill offered to pay him $5000 to drive to California and bring back methamphetamine that Benenhaley

---

**1** Before Cockerill submitted his brief, he requested permission to file a pro se brief of 120 pages. We responded that his brief should not exceed 50 pages. Without waiting to receive a response, however, Cockerill submitted a pro se brief of 115 pages plus exhibits. Despite his failure to comply with the limit, we have considered all the issues he raised and find that none of them has merit.

2

planned to buy. Secor refused to go for less than $7500, and Cockerill told him Benenhaley would pay him the extra $2500. Secor then drove Benenhaley to California and transported the methamphetamine to South Carolina while Benenhaley flew back. On his return, Secor received a small portion of the methamphetamine and was paid by Benenhaley and Cockerill. (JA-I at 108-110, 116). He described the methamphetamine as, "the good stuff," by which he meant that "[i]t is undiluted, unadulterated. It is not cut. It is pure."

In the presentence report, the sixty grams of methamphetamine sold to the informant in February 1998 and the 1.8 to 2.2 kilograms of pure methamphetamine purchased by Benenhaley in California in 1996 were attributed to Cockerill, giving him an offense level of 36. (JA-II at 205-06). Cockerill objected to the offense level, stating that he "was not involved in any way in obtaining drugs, via a trip to California, which involved Anderson Benenhaley and David Secor." However, at the sentencing hearing, he admitted his involvement in the California purchase and withdrew his objection. The district court adopted the probation officer's recommended findings and guideline range.

Cockerill now claims that the district court committed plain error in calculating the offense level based on the assumption that the methamphetamine Benenhaley purchased in California in 1996 was pure methamphetamine rather than a methamphetamine mixture. The Drug Quantity Table provides that, for offenses involving methamphetamine, the offense level is determined by the weight of the pure methamphetamine--described in § 2D1.1 as methamphetamine (actual)--or by the entire weight of a mixture containing methamphetamine, whichever is greater. See USSG§ 2D1.1(c), Note *(B). However, the base offense level for 1 to 3 kilograms of methamphetamine (actual) is 36, while the base offense level for 1.5 to 5 kilograms of methamphetamine mixture is 34. See USSG § 2D1.1(c). Cockerill argues that Secor's testimony was insufficient evidence that pure methamphetamine was purchased. He maintains that, in the absence of reliable evidence of the purity of the methamphetamine, the sentencing court must treat the substance as a mixture.

Cockerill relies on United States v. Rusher, 966 F.2d 868, 879 (4th Cir. 1992), in which the defendants challenged the five-year manda-

3

tory minimum sentence they received for possessing 72 grams of methamphetamine at 86-91% purity.[2] Rusher held that the proper method for determining the amount of pure methamphetamine possessed was "to multiply the purity of the drug times its quantity . . . ." Rusher, 966 F.2d at 880 (following United States v. Stoner, 927 F.2d 45, 46-47 (1st Cir. 1991)). Rusher is inapposite because, in Cockerill's case, the methamphetamine purchased in California was not seized and its purity could not be analyzed. The only evidence of its purity was Secor's testimony. Cockerill argues that, in the absence of a laboratory analysis of the methamphetamine purchased in California, the district court was required to treat the methamphetamine as a mixture. However, Rusher does not compel this result. Cockerill further argues that the court should have treated the methamphetamine as 28% pure, because the sixty grams of methamphetamine Cockerill helped to distribute to the informant in February 1998 was analyzed and was 28% pure. Because the methamphetamine distributed to the informant obviously had been cut, its purity did not provide any information as to the purity of the methamphetamine from which it was derived, or whether it was from the methamphetamine obtained in 1996 by Benenhaley.

Cockerill also relies on United States v. Bogusz , 43 F.3d 82, 87 (3d Cir. 1994), in which the Third Circuit held that"methamphetamine (actual) refers to the net amount of methamphetamine hydrochloride produced . . . after all impurities, byproducts, or cutting agents are removed." Bogusz further held that the government has the burden of proving the purity of the methamphetamine if the defendant is sentenced for methamphetamine (actual). Id. at 88. In Cockerill's case, the bulk of the methamphetamine used to calculate his offense level was not seized and could not be analyzed, but there was evidence through Secor's testimony that it was of very good quality. The sentencing guidelines do not require absolute certainty about the amount of drugs or their purity when the drugs are not seized or the amount seized does not reflect the scale of the offense. See USSG § 2D1.1,

_____

**2** A 5-year sentence was required at the time under 21 U.S.C. § 841(b)(1)(B)(viii) when the offense involved"10 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, or 100 grams of a mixture or substance containing a detectable amount of methamphetamine . . . ."

4

comment. (n.12). In such cases, the district court may estimate the quantity, and may use whatever reliable evidence is available. Id.; see also USSG § 6A1.3(a) (in resolving disputed sentencing factors, district court may consider any information with sufficient indicia of reliability to support its probable accuracy).

Here, the district court noted that Secor had been"an excellent witness," in contrast to Cockerill, whose testimony at the sentencing hearing the court found unconvincing. In the absence of an objection from Cockerill, we find that the district court did not plainly err in accepting Secor's testimony as evidence that the methamphetamine Benenhaley obtained in California was pure methamphetamine. Consequently, the district court properly determined that Cockerill was responsible for more than one kilogram of pure methamphetamine, and sentenced him accordingly.

Cockerill's ex post facto argument is premised on the assumption that the 1.8 to 2.2 kilograms of methamphetamine purchased in California in 1996 should have been treated as a methamphetamine mixture rather than as pure methamphetamine.[3] However, there was no change in the base offense level for 1-3 kilograms of methamphetamine (actual) from 1996 to 1998; the offense level was 36 in the 1995 Guidelines Manual and remained so through the 1998 Guidelines Manual. The base offense level for 1-3 kilograms of methamphetamine (a mixture) was 32 in the 1995 Guidelines Manual. The 1997 and 1998 manuals provided a base offense level of 32 for 500 grams to 1.5 kilograms of methamphetamine mixture, 34 for 1.5 to 5 kilograms of methamphetamine mixture, and 36 for 5-15 kilograms of methamphetamine mixture.

_____

[3] The Guidelines Manual in effect on the date of sentencing is to be used unless the district court determines that its use would violate the Ex Post Facto Clause of the Constitution. See United States v. Morrow, 925 F.2d 779, 782-83 (4th Cir. 1991); USSG § 1B1.11(b)(1). A violation occurs when the guidelines in effect on the date of sentencing inflict a greater punishment than those in effect on the last date of the offense of conviction; relevant conduct occurring later is not considered. See USSG § 1B1.11, comment. (n.2). If the defendant has been convicted of two crimes, only one of which occurred after a revised edition of the Guidelines Manual took effect, the revised edition should be applied to both offenses. See USSG § 1B1.11(b)(3).

5

Because Cockerill was held responsible for at least 1.8 kilograms of pure methamphetamine and 60 grams of methamphetamine mixture, the change did not affect his sentence calculation. As explained above, the district court did not plainly err in holding Cockerill responsible for 1.8 kilograms of pure methamphetamine. Consequently, the district court did not plainly err in applying the 1998 Guidelines Manual.

We therefore affirm the sentence. Cockerill's motion to file a pro se supplemental brief is granted. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6