Oran Edward HAMILTON,
Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 94–56095.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1995.

Decided Sept. 5, 1995.

Michael J. Brennan, Post Conviction Justice Project, University of Southern California, Los Angeles, California, for the petitioner-appellant.

Stephen J. McConnell, Assistant United States Attorney, Los Angeles, California, for the respondent-appellee.

Before: FARRIS and O'SCANNLAIN, Circuit Judges; TASHIMA,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must determine whether a court, in resentencing a defendant pursuant to a retroactive amendment to the Sentencing Guidelines, must apply the Guidelines in effect at the time of the resentencing or those in effect at the time of the offense.

I

In October 1989, an agent of the Bureau of Alcohol, Firearms and Tobacco discovered that Oran Hamilton had purchased a Mossberg 12–gauge shotgun earlier that month from Western Surplus in Los Angeles, California. At the time of purchase, Hamilton had three prior felony convictions for drug-related offenses.

Hamilton ultimately pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hamilton's base offense level, pursuant to section 2K2.1 of the 1988 Sentencing Guidelines,[1] was 9. The Presentence Report ("PSR") recommended a two-level downward adjustment for acceptance of responsibility and assigned a criminal history category of V. This resulted in a sentencing range of 12 to 18 months.

The PSR also recommended an enhancement of Hamilton's sentence pursuant to section 4B1.1 of the Guidelines. Section 4B1.1 provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Reasoning that Hamilton's current conviction for being a felon in possession of a firearm was a crime of violence, and recognizing that Hamilton had been convicted three times previously for narcotics trafficking, the PSR concluded that Hamilton was a "career offender." Hamilton's base offense level thus increased to 22 and his criminal history category increased to VI, resulting in a recom-

---

\* The Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. It is unclear why the sentencing court applied the Guidelines in effect at the time of Hamilton's offense—the October 1988 Guidelines—rather than the November 1989 Guidelines in effect at the time of sentencing. *See United States v. Warren*, 980 F.2d 1300, 1304 (9th Cir.1992) (generally, district court applies Guidelines in effect on date that defendant is sentenced), *cert. denied*, — U.S. —, 114 S.Ct. 397, 126 L.Ed.2d 344 (1993). We note that under the 1988 Guide-

lines, Hamilton's base offense level was 9; the 1989 Guidelines elevated the base offense level to 12. The sentencing court may have concluded that to apply the 1989 Guidelines with the elevated base offense level would pose Ex Post Facto problems, and thus chose to sentence Hamilton under the Guidelines in effect at the time of his offense. *See id.* (where application of the Guidelines in effect at the time of sentencing violates the Ex Post Facto Clause, "the defendant is to be sentenced under the relevant provisions of the Guidelines in effect at the time of the offense").

mended sentencing range of 84 to 105 months. In October 1990, the district court sentenced Hamilton to a term of 84 months of imprisonment and a three-year term of supervised release.

In December 1993, Hamilton filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2255. Among other claims, Hamilton contended that he should be resentenced in light of Amendment 433, a November 1991 amendment to the Sentencing Guidelines which applies retroactively.[2] Amendment 433 provides that "[t]he term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. § 4B1.2, Application Note 2.

The district court agreed with Hamilton that resentencing was appropriate in light of Amendment 433. At resentencing, in May 1994, the court concluded that Hamilton could not be viewed as a career offender. However, the court did not simply sentence Hamilton to 12 to 18 months—the recommended range under the 1988 Guidelines, absent the career offender enhancement. Rather, the court applied the Guidelines in effect at the time of resentencing—the November 1993 Guidelines. Under the 1993 Guidelines, pursuant to a revised section 2K2.1, Hamilton's base offense level was raised to 24; this resulted in a guideline range of 77 to 96 months. The district court resentenced Hamilton to 77 months.

Hamilton appealed, contending that the district court violated the Ex Post Facto Clause in resentencing him under the Guidelines in effect at the time of resentencing, rather than those in effect at the time of his offense.

## II

Before reaching the merits of Hamilton's appeal, we must consider a challenge made by the government to the sentencing court's jurisdiction. It is the government's contention that the district court lacked jurisdiction under 28 U.S.C. § 2255 to resentence Hamilton.[3] Rather, the government suggests, Hamilton should have brought his action pursuant to 18 U.S.C. § 3582(c)(2), which permits courts to modify sentences on the motion of a defendant who "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."[4]

■■■ 28 U.S.C. § 2255 permits federal prisoners to file motions to set aside or correct a sentence on the ground that

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

Although collateral review under section 2255 is thus quite broad, "it does not encompass all claimed errors in ... sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). If a petitioner does not allege lack of jurisdiction or constitutional error, an error of law will not provide a basis for habeas relief unless that error "resulted in a complete miscar-

---

**2.** The parties do not dispute that Amendment 433 applies retroactively. Section 1B1.10 of the Sentencing Guidelines provides:

Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the guidelines listed in subsection (d), a reduction in the defendant's term of imprisonment may be considered under 18 U.S.C. § 3582(c)(2).

Subsection (d), as referred to in § 1B1.10, expressly provides that Amendment 433 is retroactive.

**3.** Hamilton argues that the government has waived this argument by failing to raise it below. It is well established, however, that jurisdictional

questions constitute an exception to the general waiver rule. *See, e.g., Ratanasen v. California Dep't of Health Servs.*, 11 F.3d 1467, 1473 (9th Cir.1993).

**4.** Section 3582(c)(2) provides, in relevant part, that:

The court may not modify a term of imprisonment once it has been imposed except that—

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... the court may reduce the term of imprisonment ... if such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

riage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck,* 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (quotations omitted) (rejecting habeas claim based on violation of Fed.R.Crim.P. 11).

Hamilton's contention below—that he be resentenced in light of Amendment 433—raised neither a claim of constitutional nor jurisdictional error. Nor are we persuaded that the district court's failure to apply a rule that had not yet been articulated at the time of sentencing represents a miscarriage of justice. In reaching this conclusion, we are guided by the Fifth Circuit's decision in *United States v. Towe,* 26 F.3d 614 (5th Cir.1994). In *Towe,* the court held that "the district court's failure to apply a guideline that was not effective at the time of sentencing does not give rise to a complete miscarriage of justice." *Id.* at 616. We would add that excluding Hamilton's claim from habeas review will not force Hamilton to serve an improper sentence nor preclude Hamilton from obtaining redress. Rather, 18 U.S.C. § 3582 expressly permits review in cases such as Hamilton's. *See Rodriguez–Alonso v. United States,* 807 F.Supp. 21, 22 (E.D.N.Y.1992) (relief available under 18 U.S.C. § 3582, and not 28 U.S.C. § 2255, for defendant sentenced under guideline that was later amended to provide a lower offense level).

■ Although we are persuaded that the district court lacked authority to resentence Hamilton under section 2255, we find it unnecessary to remand this case to the district court with an order to dismiss Hamilton's action. Instead, we will construe Hamilton's pro se section 2255 motion as a request for resentencing under 18 U.S.C. § 3582. To do so is consistent with the duty of federal courts to construe pro se pleadings liberally. *See, e.g., Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) ("It is settled law that the allegations of [pro se] complaint[s], however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers." (quotations omitted)).

III

■ We now turn to the merits of Hamilton's claim. Under the 1988 Guidelines, Hamilton's base offense level was 9. *See* U.S.S.G. § 2K2.1 (Oct. 1988). In contrast, under the 1993 Guidelines, his base offense level was increased to 24. *See* U.S.S.G. § 2K2.1 (Nov. 1993). In light of this increase, Hamilton contends, the district court's application of the 1993 Guidelines violated the Ex Post Facto Clause.

■ To fall within the Ex Post Facto prohibition, two elements must be present: "first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quotations omitted). The 1993 Guidelines satisfy squarely the first element: the 1993 version of section 2K2.1 has been applied to a crime that occurred in 1989, four years prior to its enactment.

We are further persuaded that the application of the 1993 Guidelines disadvantaged Hamilton. As Hamilton argues, the 1993 version of section 2K2.1 imposes a base offense level 15 levels higher than that imposed under the 1988 version—resulting in a harsher punishment under the later Guidelines.

The government argues that such focus is misdirected. An Ex Post Facto violation does not occur when one provision of the Guidelines becomes more onerous, the government contends; rather, it suggests, the total effect of all relevant guidelines provisions must be considered in making such a determination. Applying such logic here, the government notes that the ultimate sentence imposed on Hamilton under the 1993 Guidelines was actually lower than that imposed under the 1988 Guidelines. Indeed, Hamilton's recommended sentencing range declined from 84 to 105 months to 77 to 96 months, and Hamilton's ultimate sentence was reduced from 84 months to 77 months. Thus, when one considers the total effect of all relevant Guidelines provisions, the government argues, Hamilton has not been disadvantaged.

We disagree. The government has erroneously assumed that the proper comparison is between the 84-month sentence initially imposed on Hamilton under the 1988 Guidelines and the 77-month sentence imposed upon him at resentencing. This comparison is inappropriate, however, because it is based on the sentencing court's initial sentencing "error." [5]

The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). It might appear that the punishment "assigned by law" at the time of Hamilton's offense was 84 to 105 months. However, this court has consistently construed Amendment 433 to be retroactive, applying to the Guidelines in effect prior to its enactment. *See United States v. Garcia–Cruz,* 40 F.3d 986, 990 (9th Cir.1994). "[T]he bottom line is that the [Sentencing] Commission never intended *mere possession* of a firearm to be a crime of violence for the purposes of determining status as a career offender." *Id.* (emphasis in original).

Under this reasoning, when the sentencing court initially sentenced Hamilton, it erred in calculating his sentence; instead of being sentenced to 84 months, Hamilton should have been sentenced only to 12 to 18 months. Therefore, we must compare the sentence that Hamilton received upon resentencing, 77 months, to the sentence that he should have received originally, 12 to 18 months. Comparing these two sentences makes clear that Hamilton was disadvantaged by application of the 1993 base offense level. It is thus evident that Hamilton has been disadvantaged whether the sentence imposed upon him is considered in whole (77 months being greater than 12 to 18 months) or in part (a

base offense level of 24 being greater than that of 9).[6]

Having concluded that the application of the 1993 Guidelines to Hamilton violates the Ex Post Facto Clause, we must next determine under what Guidelines provisions Hamilton should be resentenced. Hamilton points to the general principle that where application of the amended version of the Guidelines results in a harsher sentence, the defendant is to be sentenced under the Guidelines in effect at the time of the offense. *See United States v. Warren,* 980 F.2d 1300, 1304 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 397, 126 L.Ed.2d 344 (1993). Applying this principle, Hamilton contends that he should be resentenced pursuant to the 1988 Guidelines but also pursuant to Amendment 433.

Hamilton's contention is correct. In *United States v. Garcia–Cruz,* 40 F.3d 986, 990 (9th Cir.1994), we held that where the application of the amended Guidelines results in a harsher sentence, the sentencing court is to apply the Guidelines in effect at the time of the offense, but must also consider the clarification provided by Amendment 433. As we conclude that application of the 1993 Guidelines indeed violates the Ex Post Facto prohibition, *Garcia–Cruz* dictates that the sentencing court apply the Guidelines in effect at the time of the offense—the 1988 Guidelines—in light of Amendment 433.

Accordingly, we vacate the sentence imposed by the district court and remand for resentencing in accordance with the foregoing principles.

VACATED and REMANDED.

---

**5.** We use the word "error" here with no intent to impugn the actions of the district court. Indeed, it was not until 1992 that this court definitively held that felon in possession was not per se a crime of violence, in the process repudiating our prior holdings to the contrary. *See United States v. Sahakian,* 965 F.2d 740, 742 (9th Cir.1991). We do not fault the sentencing court for failing to anticipate this change in the law.

**6.** The question of whether an Ex Post Facto violation occurs when one provision of the Guidelines becomes more onerous, or whether the total effect of all relevant Guidelines provisions must be considered is an interesting one. However, we need not resolve it here as we find Hamilton to have been disadvantaged under either approach.