114 F.3d 964
 97 Cal. Daily Op. Serv. 4364, 97 Daily Journal
D.A.R. 7281
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Lee SCRIVNER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barbara Lammsies SCRIVNER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Michael GRAY, Defendant-Appellant.
 Nos. 95-30227, 95-30239, 95-30240.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 16, 1996.
Decided June 10, 1997.
 
 John W. Maroney, Portland, Oregon, Kenneth Ricardo Perry, Portland, Oregon, William S. LaBahn, Eugene, Oregon, for the defendants-appellants.
 Deborah J. Dealy-Browning, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.
 Appeals from the United States District Court for the District of Oregon; Ancer L. Haggerty, District Judge, Presiding. D.C. Nos. CR-93-00310-06-ALH, CR-93-00310-07-ALH, CR-93-00310-02-ALH.
 Before RUGGERO J. ALDISERT,* PREGERSON, and T.G. NELSON, Circuit Judges.
 OPINION
 T.G. NELSON, Circuit Judge:
 
 
 1
 Richard Lee Scrivner, Barbara Lammsies Scrivner, and George Michael Gray were convicted of various crimes associated with the manufacture and possession of methamphetamine pursuant to 21 U.S.C. § 841(a)(1). We hold that the district court did not commit plain error in sentencing these defendants on the basis of the general guideline calculation for "methamphetamine" without classifying the charged substance as D-methamphetamine or L-methamphetamine.[1]
 
 I. INTRODUCTION
 
 2
 Following a series of searches and arrests by local law enforcement authorities, the Scrivners and Gray were convicted on charges of conspiracy and manufacturing and possessing with intent to distribute methamphetamine. The presentence reports (PSRs) attributed 108 kilograms of methamphetamine to each of the Scrivners, and 124 kilograms to Gray.
 
 
 3
 Because the convictions were under 21 U.S.C. § 841(a)(1), the PSRs first referred to Section 2D1.1(a)(3) of the sentencing guidelines, and then used the Drug Quantity Table found in Section 2D1.1(c) to reach base offense levels for each defendant. At the time the Scrivners and Gray were sentenced, Application Note 10 to the Commentary following Section 2D1.1 stated:
 
 
 4
 The Commission has used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1)), as the primary basis for the guideline sentences. The statute, however, provides direction only for the more common controlled substances, i.e., heroin, cocaine, PCP, methamphetamine, fentanyl, LSD and marihuana. The Drug Equivalency Tables set forth below provide conversion factors for other substances, which the Drug Quantity Table refers to as "equivalents" of these drugs.
 
 
 5
 U.S.S.G. § 2D1.1, comment. n.10 and Drug Equivalency Tables (Nov. 1, 1994) (emphasis added). Within those Drug Equivalency Tables, D-meth and L-meth were distinguished, and the sentence for D-meth was either 25 or 250 times greater than the sentence for L-meth, depending upon the purity of D-meth involved in a particular offense.[2] Id.
 
 
 6
 Throughout the trial and sentencing phases of this case, no one-neither the Scrivners, Gray, their co-defendant, nor any defense counsel-mentioned Application Note 10 to the Commentary following Section 2D1.1 or the distinction between D-meth and L-meth in the Drug Equivalency Tables of Section 2D1.1. The presentence report and the district court proceeded as if the methamphetamine at issue in this case was the "more common controlled substance" (i.e., D-meth). On July 3, 1995, the Scrivners were each sentenced to 360 months' imprisonment, and Gray was sentenced to life imprisonment.
 
 
 7
 On appeal, the Scrivners and Gray challenge the calculation of the sentences they received and essentially contend that the district court committed "plain error" because, at the time of sentencing, it did not, sua sponte, require the government to prove that the charged offenses involved a particular variety of methamphetamine, i.e., D-meth as opposed to L-meth. Had the district court done so, the Scrivners' and Gray's base offense levels might have been reduced and, correspondingly, so might their sentences.
 
 II. STANDARD OF REVIEW
 
 8
 Since defendants did not object to the presentence report or raise an objection at their sentencing hearing regarding the type of the methamphetamine involved in their case, we may review this sentencing challenge under the plain error standard. United States v. Lopez-Cavasos, 915 F.2d 474, 475 (9th Cir.1990). We will exercise our discretion to correct such a forfeited claim, however, only where there "indeed [is] an 'error,' " United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776-77, 123 L.Ed.2d 508 (1993), where the error is "obvious," Id. at 734, 113 S.Ct. at 1777-78, and where the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 736, 113 S.Ct. at 1779 (internal quotations, citations and alterations omitted).
 
 III. DISCUSSION
 A. The "D-meth" versus "L-meth" Distinction
 
 9
 In United States v. Dudden, 65 F.3d 1461 (9th Cir.1995), we discussed the distinction between D-meth and L-meth and acknowledged that:
 
 
 10
 The drug methamphetamine exists in two isomeric forms, and the two isomers have profoundly different effects. The isomer levo-methamphetamine ("L-methamphetamine") produces little or no physiological effect when ingested. Dextro-methamphetamine ("D-methamphetamine"), however, produces the high desired by the drug's users. The Sentencing Guidelines therefore treat L-methamphetamine much less severely than D-methamphetamine. One gram of L-methamphetamine is equivalent to 40 grams of marijuana, while one gram of D-methamphetamine is equivalent to ten kilograms of marijuana. § 2D1.1. at comment. n. 10. A defendant's sentence thus varies significantly depending on which variety of methamphetamine is involved.
 
 
 11
 65 F.3d at 1470 (emphasis added) (internal quotations and citations omitted). One can learn more then he or she wants to about this subject, but it is sufficient to say that D-meth and L-meth have the same chemical formula but different structural formulas, and one has street value while the other has no value. See, United States v. Bogusz, 43 F.3d 82, 88 (3d Cir.1994), cert. denied sub nom. O'Rourke v. United States, 514 U.S. 1090, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995) (citing Harold Hart Organic Chemistry, A Short Course (6th ed.1983)).
 
 
 12
 Before proceeding with our review for plain error, we note that after these defendants were sentenced the guidelines were amended to eliminate any distinction between D-meth and L-meth. See U.S.S.G. § 2D1.1 (Nov. 1, 1995). Amendment 518 explains that the change was made because L-meth "is rarely seen and is not made intentionally, but rather results from a botched attempt to produce d-methamphetamine." U.S.S.G.App. C, Amendment 518 at 423 (Nov. 1, 1995). Thus, under the amendment, "all forms of methamphetamine are treated alike, thereby simplifying guideline application." Id. at 424.
 
 
 13
 B. Application of the "Plain Error" Standard to the D-Meth
 
 
 14
 versus L-Meth Distinction in the Sentencing Guidelines
 
 
 15
 Had the Scrivners and Gray challenged the "type" of methamphetamine referred to in the presentence report at the time of sentencing, Rule 32(c)(1) of the Federal Rules of Criminal Procedure would have required the district court to make specific findings on the "type" of methamphetamine involved in this case. See United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir.1990) (en banc) (emphasis added) ("[W]hen [a] defendant challenges the factual accuracy of any matters contained in the presentence report, the district court must, at the time of sentencing, make the findings or determinations required by Rule 32.").
 
 
 16
 Notwithstanding a defendant's right to challenge the accuracy of a PSR, it is well settled that factual findings in a PSR can be accepted as accurate and are reviewed only for plain error if a defendant failed to raise objections at the time of sentencing. Lopez-Cavasos, 915 F.2d at 475-76. Here, the Scrivners and Gray concede that they did not raise an objection at the time of sentencing regarding the "type" of methamphetamine at issue. Nevertheless, these defendants contend that the district court committed "plain error" when it relied on the PSR's factual findings based on the "Drug Quantity Table" set forth in Section 2D1.1(c), instead of the Drug Equivalency Tables following Note 10 of the Commentary to Section 2D1.1, which distinguished between D-meth and L-meth.
 
 
 17
 The D-meth versus L-meth distinction, which existed prior to Amendment 518 of the guidelines, has been the basis for a number of appeals in this circuit. See, e.g., Dudden, 65 F.3d at 1470-71 (holding that where a defendant raised the D-meth versus L-meth issue at sentencing, the government had the burden of proving by a preponderance of the evidence the type of methamphetamine involved in that case, and that the district court committed clear error by using expert witness affidavits prepared for another case as a basis for its factual findings on that issue); United States v. McMullen, 98 F.3d 1155, 1157-58 (9th Cir.1996) (holding that a defendant, who did not raise the issue of methamphetamine type at any time during his sentencing or on direct appeal, was barred from raising the D-meth versus L-meth issue for the first time in a Section 2255 motion, and defense counsel's failure to pursue the issue at sentencing did not fall below an objective standard of reasonableness).
 
 
 18
 This case, however, appears to be the first in which we have been asked to find "plain error" where, in the absence of one of the defendants having raised the issue at the time of sentencing, the district court accepted the factual findings of the PSRs and did not conduct an evidentiary hearing to classify the methamphetamine at issue as D-meth or L-meth. As to this particular issue, we find a split among the circuits.
 
 
 19
 In United States v. Deninno, 29 F.3d 572 (10th Cir.1994), cert. denied, 513 U.S. 1158, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995), the Tenth Circuit addressed a situation where:
 
 
 20
 No objection was ever made throughout the trial concerning the type of methamphetamine the witnesses discussed. No objection was made about the type of methamphetamine used for calculations in the presentence report, although the report clearly calculated [the defendant's] base offense level using D-methamphetamine. No objection was raised at the sentencing hearing as to the type of methamphetamine attributed to [the defendant].
 
 
 21
 Id. at 580. The Tenth Circuit affirmed a sentence imposed on the basis of D-meth reasoning that: "The type of methamphetamine is a factual issue for the sentencing court to determine," and since the defendant failed to object to the type of methamphetamine involved, the appropriate standard of review was "plain error"-however, "factual disputes do not rise to the level of plain error." Id. (citation omitted).
 
 
 22
 In United States v. Bogusz, supra, defendants did not raise the precise issue of D-meth versus L-meth at the time of sentencing. Nevertheless, the Third Circuit distinguished the facts of the case from those in Deninno and held that defendants had raised sufficient objections at the time of sentencing regarding the "purity" of the methamphetamine at issue, to "preserv[e] the [D-meth versus L-meth] issue for appeal." 43 F.3d at 89. Even if the defendants in Bogusz had not preserved the issue for appeal, in dictum, the Third Circuit indicated that "under ... [the] circumstances ... the district court's interpretation of the Guidelines would be plain error." Id.
 
 
 23
 In United States v. Ramsdale, 61 F.3d 825 (11th Cir.1995), the Eleventh Circuit had the opportunity to consider a case with facts similar to Deninno and the case currently before us, and essentially concluded that "it was plain error to sentence [the defendants] on the basis of D-methamphetamine," and that "[t]he government and the district court should have known that findings as to the type of methamphetamine were required." Id. at 832.
 
 
 24
 For the reasons that follow, we are not convinced by the dicta from the Third Circuit or the decision from the Eleventh Circuit. Instead, we agree with the approach taken by the Tenth Circuit in Deninno.
 
 
 25
 The statute under which the Scrivners and Gray were charged and convicted, 21 U.S.C. § 841(a)(1), uses only the unqualified term "methamphetamine." As in Deninno, no objection was ever made throughout the trial concerning the type of methamphetamine at issue in this case. No objection was made about the type of methamphetamine used for calculations in the presentence report. No objection was raised at the sentencing hearing as to the type of methamphetamine attributed to these defendants. In fact, at no point prior to this appeal is there any suggestion in the record that the controlled substance at issue in this case was anything other than "the more common controlled substance, i.e., methamphetamine." Nor, prior to appeal, is there any suggestion anywhere in the record that the Drug Equivalency Tables of Section 2D1.1 should have been consulted because the defendants were actually conspiring to manufacture and possess with the intent to distribute the product known as "L-methamphetamine."
 
 
 26
 The Scrivners and Gray do not explain why they did not raise the D-meth versus L-meth issue before the district court. This is precisely the kind of issue which should be raised at trial or at sentencing, and because it is "fact-specific [and] may require an evidentiary hearing or proffer of evidence," the district court "should have the first opportunity to rule." United States v. Flores-Payon, 942 F.2d 556, 560 (9th Cir.1991).
 
 
 27
 "In applying the plain error standard we consider all circumstances at trial including the strength of the evidence against the defendant." United States v. Campbell, 42 F.3d 1199, 1204 (9th Cir.1994), cert. denied, 514 U.S. 1091, 115 S.Ct. 1814, 131 L.Ed.2d 738 (1995) (quotations omitted). We may look to circumstantial evidence to affirm the district court's treatment of the drug involved as D-methamphetamine. Dudden, 65 F.3d at 1471 ("circumstantial evidence may be sufficient to determine which isomer is involved").
 
 
 28
 Here, the record, both at trial and at the sentencing hearing, is replete with testimony that the substance possessed, manufactured and distributed by the members of the conspiracy was methamphetamine. At the time of sentencing, the Scrivners, Gray and their respective counsel knew that the defendants were being sentenced according to the D-methamphetamine guidelines. While the defendants did object to the quantities of methamphetamine for which they were being held responsible in the PSRs, they at no time objected to the quality of the methamphetamine (i.e., its type or purity). There was evidence that the defendants made large sums of money from their illegal drug operation, and that the methamphetamine which they manufactured was being sold on the street. Because L-methamphetamine "produces little or no physiological effect," Dudden, 65 F.3d at 1470, it would not stand to reason that defendants were selling large amounts of L-methamphetamine on the street for a profit. Compare Dudden, 65 F.3d at 1471 (defendant offered contradicting testimony that the methamphetamine at issue was "kind of funny, orange," "pretty different," and "that it was hard to sell," and the Government "presented no direct or circumstantial evidence ... to support a finding that the drug was D-methamphetamine.").
 
 
 29
 In Ramsdale, the Eleventh Circuit cited Olano for the proposition that a party claiming the district court committed plain error must show "(1) there was an error in the district court's action; (2) such error was plain, clear or obvious; and (3) the error affected substantial rights, in that it was prejudicial and not harmless." Ramsdale, 61 F.3d at 832. Interestingly, the Eleventh Circuit's analysis of Olano's second element focused almost exclusively on the impact of the difference between D-meth and L-meth on the length of a given sentence; and relied on the existence of a recent decision from that circuit where a defendant raised the D-meth versus L-meth issue and the government was required to prove the type of methamphetamine involved. Id. (citing United States v. Patrick, 983 F.2d 206 (11th Cir.1993)).
 
 
 30
 However, we find it significant that Ramsdale did not discuss why the district court's error was "obvious" as required by Olano, nor did it address the defendant's failure to meet his burden of objecting to factual inaccuracies in the presentence report at the time of sentencing, rather than on appeal.
 
 
 31
 In our review of the three limitations Olano places on appellate courts under Rule 52(b) of the Federal Rules of Criminal Procedure, we are not convinced that, merely because the district court did not sua sponte require the government to prove that the charged offenses involved a particular type of methamphetamine, i.e., D-meth as opposed to L-meth, there was an error in the first place.
 
 
 32
 As demonstrated by the record, the Government proved the substance involved in the charged offenses was "methamphetamine," and that the partial barrel of the precursor chemical nitroethane found at one site could be used to produce 93 kilograms of methamphetamine. There was not a whisper of a suggestion in the record that the substance being created and distributed by the conspiracy was, in the words of the Commentary to Section 2D1.1, not the "more common controlled substance[ ]" at the heart of the methamphetamine calculations in this case.
 
 
 33
 At trial and at sentencing, the Government had the burden of proving beyond a reasonable doubt that the controlled substance in this case was methamphetamine-it did not have the burden of proving the type of methamphetamine. "[T]he burden of alleging factual inaccuracies of the presentence report is on the defendant." Deninno, 29 F.3d at 580 (citing Fed.R.Crim.P. 32(c)(3)(D)). Had defendants raised the issue regarding the type of methamphetamine, since it was not an element of the crimes charged, the government would have been required to prove the type of methamphetamine by a preponderance of the evidence. Id. In the absence of their raising that issue, there is no basis in the guidelines or under Rule 32 of the Federal Rules of Criminal Procedure for imposing on the Government the additional burden of proving a negative, i.e., that the substance involved in this case was not L-meth. Moreover, there is no basis for requiring the district court to carry out an onerous and unachievable task of considering every conceivable argument which a defendant might raise and which might result in a lesser sentence under the guidelines.
 
 
 34
 If, for the sake of argument, error is assumed to exist in this case, then it certainly was not "obvious." Prior to appeal, the record refers only to the "more common controlled substance, i.e., methamphetamine." There is no reference to the controlled substance at issue being anything other than plain old "methamphetamine." An experienced judge, prosecutor and multiple defense counsel proceeded with the sentencings based on the defendants' involvement with "methamphetamine." Why? Because that is what it was. Compare McMullen, 98 F.3d at 1158 ("Perhaps it simply never occurred to [defense counsel or anyone else] that serious drug dealers would set out to make or would possess with intent to distribute L-methamphetamine, an isomer of methamphetamine that had no street value whatsoever and no physiological effect desired by its buyers.")
 
 
 35
 Although the policy statement about the "Resolution of Disputed Factors" under the guidelines states that "[w]hen any factor important in sentencing is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor," U.S.S.G. § 6A1.3 (Nov. 1, 1994) (emphasis added), nothing in the record suggested either that the type of methamphetamine involved in this case was "reasonably in dispute" or in dispute at all. There was absolutely nothing to suggest to the district court that it should look to the Commentary to Section 2D1.1 and the Drug Equivalency Tables to determine if defendants were involved with L-meth, a substance which has since been characterized as "rarely seen and ... not made intentionally." U.S.S.G.App. C, Amendment 518 at 423.
 
 
 36
 "Plain error," as recently recognized in this circuit, "is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." United States v. Turman, 104 F.3d 1191, 1194 (9th Cir.1997). The sort of afterthought represented by the issue raised in this appeal simply does not rise to the level of plain error.
 
 IV. CONCLUSION
 
 37
 For all of the foregoing reasons, we join the Tenth Circuit in holding that, where defendants do not object at trial or sentencing about the type of methamphetamine involved in their case, it is not plain error for a district court to sentence those defendants based on their involvement with the more common methamphetamine, without making a factual finding to classify the methamphetamine as D-meth, as opposed to L-meth.
 
 
 38
 Defendants' sentences based on D-methamphetamine are AFFIRMED.
 
 
 
 *
 Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 We address all other issues raised on appeal by the Scrivners, Gray, and their co-defendant Larry Steven Malone (No. 95-30234), in an unpublished memorandum disposition
 
 
 [2]
 To the extent the methamphetamine with which defendants were held accountable was considered D-meth, defendants have not contested its purity. Instead, defendants contend that the district court should be required to make a factual finding that their offenses involved D-meth, as opposed to L-meth