**UNITED STATES of America,
Plaintiff–Respondent,**

v.

**Emigdio OLMOS–ESPARZA,
Defendant–Petitioner.**

Civil No. 97–0726.
Criminal No. 92–0165.

United States District Court,
S.D. California.

Aug. 12, 1997.

Alan D. Bersin, U.S. Atty., Linda A Frakes, Asst. U.S. Atty., San Diego, CA, for Plaintiff–Respondent.

Emigdio Olmos–Esparza, Tucson, AZ, pro se.

## ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

RHOADES, District Judge.

### I. Overview

Petitioner Emigdio Olmos–Esparza has filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons stated below, the Motion is denied.

### II. Background

On February 2, 1992 federal agents at the United States Border Control checkpoint in Temecula inspected Petitioner's vehicle. They discovered five bags, each of which contained a controlled substance. One bag contained 6.041 grams of a substance containing methamphetamine. Another contained 72.3 grams of a substance containing methamphetamine. The remaining three bags collectively contained 1380.8 grams of marijuana.

On February 12, 1992 a federal grand jury returned a two-count indictment against Petitioner. Count one charged him with possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Count two charged him with possession of marijuana with intent to distribute in violation of the same statute. Petitioner pleaded not guilty, and on December 10, 1992 a jury found him guilty of both counts.

Pursuant to the United States Sentencing Guidelines, on May 9, 1994 this Court sentenced Petitioner to 140 months of imprisonment on count one to run concurrently with a sentence of 48 months on count two. Petitioner appealed to the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit affirmed the judgment and sentence on April 6, 1995.

### III. Discussion

On April 18, 1997 Petitioner filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, seeking to have his sentence reduced. On May 8, 1997 Petitioner filed additional papers, supplementing his Motion.

Read with liberality, Petitioner's Motion argues that the Court should reduce his sentence for four reasons. First, Petitioner claims that the Court erred in sentencing by not determining the type of methamphetamine involved in the offense. Petitioner argues that this error was caused partly by ineffective assistance of counsel. Second, Petitioner argues that the Court erred in sentencing by not determining the quantity of drugs Petitioner had intended for personal use rather than distribution. Third, Petitioner argues that the United States Sentencing Guidelines' treatment of methamphetamine lacks a rational basis, in violation of the Due Process Clause of the Fifth Amendment. Finally, Petitioner argues that the Court sentenced him for possessing more methamphetamine than he actually had.

The Court will address each of these arguments in turn.

## A. Petitioner's Claim That The Court Did Not Determine The Type Of Methamphetamine Involved In The Offense

■ When this Court sentenced Petitioner, the United States Sentencing Guidelines mandated different penalties for possession of different types of methamphetamine. Specifically, the Guidelines provided more lenient treatment for possession of Levo-methamphetamine ("L-methamphetamine") than for the more potent and more valuable Dextro-methamphetamine ("D-methamphetamine"). *See* U.S.S.G. § 2D1.1 comment., (n.10) (Nov.1990).[1] When a defendant raised the issue of methamphetamine type, a district court was required to determine which type of methamphetamine was involved before imposing sentence. *United States v. Scrivner*, 114 F.3d 964, 967 (9th Cir.1997). Consistent with testimony at trial as to the type of methamphetamine involved, this Court sentenced Petitioner using the guidelines for D-methamphetamine.

Although Petitioner did not raise the issue at his sentencing hearing or on direct appeal, he now argues that sufficient information did not exist in the record to establish that the methamphetamine involved in this case was D-methamphetamine.[2] Petitioner argues that this deficiency was caused by the ineffective assistance of counsel.

The Court will not reach the merits of Petitioner's claim. As discussed below, Petitioner cannot raise this claim in his § 2255 Motion because he did not raise it in an earlier proceeding. Although narrow circumstances sometimes permit arguing an is-

sue that was not raised earlier, those circumstances do not apply here.

### 1. A § 2255 Petitioner Generally Cannot Argue Nonconstitutional Issues That Were Not Raised Earlier

■ In most circumstances, "a § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding." *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2444, 138 L.Ed.2d 203 (1997). Because "computational errors in a petitioner's presentence report do not give rise to a constitutional issue ... the issue of L versus D-methamphetamine ... may not be raised under § 2255 if it was not raised at sentencing or on direct appeal." *Id.* Accordingly, because Petitioner did not raise the issue in any previous proceeding, he ordinarily would be barred from raising it now.

### 2. Petitioner Cannot Establish The Necessary Elements That Would Allow Him To Raise The Issue Now

■ Despite these principles, Petitioner still can raise the issue if he shows good cause for failing to raise it earlier and prejudice from that failure. *Id.* (citing *Evenstad v. United States*, 978 F.2d 1154, 1158 (9th Cir.1992)). "Establishing the elements of an ineffective assistance of counsel claim normally will meet this cause and prejudice test." *Id.* (citing *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir.1993)). Here, Petitioner has advanced no potentially valid reason for failing to raise the issue of methamphetamine type other than ineffective assistance of counsel.[3] Therefore, the question of whether Petitioner can argue his claim now turns on whether Petitioner can

---

1. For a detailed discussion of the various types of methamphetamine, *see Lambert v. United States*, 908 F.Supp. 356, 361–62 (W.D.Va.1995), *aff'd*, 105 F.3d 649 (4th Cir.1997). The Guidelines since have been amended to eliminate any distinction between the two types of methamphetamine. *See* U.S.S.G. § 2D1.1 (Nov.1995).

2. Gary Goldberg, a chemist who works for the Drug Enforcement Administration, analyzed the methamphetamine and testified at trial that it was D-methamphetamine. (Trial Tr. at 106, 108.) Defendant argues, however, that the tests

Mr. Goldberg performed were subjective and prone to error, and that more reliable tests should have been conducted.

3. Petitioner also claims that he did not raise the issue because he lacked the education to do so. One purpose of attorneys is to represent individuals who, for whatever reason, cannot represent themselves. Because Petitioner's lawyer could have raised the point, Petitioner's lack of education does not establish good cause for not raising the issue.

establish that his counsel was constitutionally ineffective.

In order to establish a claim of ineffective assistance of counsel, Petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). As explained below, Petitioner cannot establish either prong of this test.

■ First, Petitioner cannot establish that his attorney's performance was objectively unreasonable. In *United States v. McMullen,* the Ninth Circuit confronted a virtually identical claim of ineffective assistance of counsel. The Ninth Circuit stated:

> Petitioner's brief nowhere points to specific ways in which the failure to raise the L-methamphetamine issue fell below prevailing professional standards. The government notes that it is very common for defense counsel not to raise this issue at sentencing.... Perhaps it simply never occurred to these lawyers that serious drug dealers would set out to ... distribute L-methamphetamine, [a drug] that had no street value whatsoever and no physiological effect desired by its buyers.... In light of the deference accorded attorney performance, and considering a clear and established background of similar professional behavior by other attorneys on this precise issue, we will not conclude that [Petitioner's] counsel's decision not to inquire about the type of methamphetamine was objectively unreasonable.

*McMullen,* 98 F.3d at 1158 (internal quotation marks and citation omitted). For the same reasons, this Court cannot say that Petitioner's attorney's failure to inquire

about the type of methamphetamine was unreasonable. *See also United States v. James,* 915 F.Supp. 1092, 1096 (S.D.Cal.1996) (noting that in hundreds of methamphetamine cases the district court had experienced, no defense attorney ever had raised the issue of methamphetamine type), *aff'd,* 103 F.3d 142 (9th Cir.1996).

■ Moreover, even if Petitioner's attorney's performance was unreasonable, Petitioner cannot establish the second prong of the *Strickland* test, that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Again, *McMullen* is dispositive here:

> [Petitioner's] bare assertion that his attorney failed to raise the issue is not enough.. Petitioner offers nothing on this point, not even a self serving declaration that it *was* L-methamphetamine.... Missing are allegations that raise a reasonable probability that the drug defendant possessed was actually L-methamphetamine.

*Id.* (internal quotation marks and citation omitted). Likewise, Petitioner here has made no allegation that the methamphetamine he possessed was L-methamphetamine, a far less common drug than D-methamphetamine. *See Scrivner,* 114 F.3d at 970. Thus, he has not raised a reasonable likelihood that, but for counsel's supposed error, Petitioner's sentence would have been different.

■ In sum, Petitioner has not established the elements of a claim of ineffective assistance of counsel. Because Petitioner has advanced no other valid reason for not raising the issue of methamphetamine type at the sentencing hearing or on direct appeal, Petitioner cannot raise the issue now. Accordingly, Petitioner's claim on this point fails.[4]

---

4. Even if Petitioner could raise the issue now, sufficient evidence existed in the record to justify sentencing him for possession of D-methamphetamine. *Cf. Scrivner,* 114 F.3d at 968–69 (finding, under "plain error" standard of review, that sufficient evidence was adduced at trial to avoid correcting the district court's failure to make a finding of methamphetamine type). At the time of trial, Mr. Goldberg had been a chemist for the Drug Enforcement Administration for over ten years, and a senior forensic chemist for approximately three years. (Trial Tr. at 101–02.) He had tested methamphetamine approximately eight hundred times. (*Id.* at 102–03.) With this impressive background, Mr. Goldberg testified that the tests he conducted revealed that the methamphetamine was D-methamphetamine. (*Id.* at 106, 108.) Even if Petitioner is correct that Mr. Goldberg's tests were not foolproof, that does not compel a finding that insufficient evidence existed in the record to establish that the methamphetamine was D-methamphetamine.

### B. Petitioner's Claim That The Court Should Have Determined The Amount Of Methamphetamine That Was For Personal Use Rather Than Distribution

Petitioner's second main argument invokes the rule that when a court sentences a defendant for possession of drugs with intent to distribute, it must impose a sentence based on the amount of drugs the defendant actually intended to distribute, rather than the total amount of drugs possessed. *United States v. Rodriguez–Sanchez*, 23 F.3d 1488, 1493–96 (9th Cir.1994); *United States v. Kipp*, 10 F.3d 1463, 1465–66 (9th Cir.1993). Petitioner argues that this Court did not comply with this principle.

Unlike Petitioner's other claim discussed above, Petitioner raised this issue at the sentencing hearing and on appeal to the Ninth Circuit. Accordingly, whether this Court should consider Petitioner's claim depends on the effect of the Ninth Circuit's decision on this issue.

### 1. Legal Standards Governing Whether This Court Can Consider A Claim Already Decided By The Ninth Circuit

As a general rule, "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding." *United States v. Currie*, 589 F.2d 993, 995 (9th Cir.1979). Indeed, "[a]bsent Supreme Court authority contrary to [the court of appeals'] decision in a case, a district court *cannot* entertain, even in a matter properly before it, a petition by a party which in effect seeks to undo [the court of appeals'] resolution of a matter first addressed to and fully and fairly adjudicated by it." *Feldman v. Henman*, 815 F.2d 1318, 1321 (9th Cir.1987); *see also Insurance Group Comm. v. Denver & Rio Grande W. R.R.*, 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947) (stating that "[w]hen matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court").

Despite these principles, "in limited circumstances, a federal prisoner may raise in a § 2255 petition claims of *trial court* error that have been previously raised and decided on direct appeal." *Feldman*, 815 F.2d at 1322 (citing *Kaufman v. United States*, 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 1074 n. 8, 22 L.Ed.2d 227 (1969)).

The scope of this exception has been clarified by Supreme Court and Ninth Circuit case law. The guiding principles may be summarized as follows: When a district court is confronted by a repetitive claim in a § 2255 Motion, the court may refuse to consider the claim and may give controlling weight to the court of appeals' determination if (1) the "same ground" presented in the § 2255 Motion was previously determined adversely to the petitioner; (2) the prior determination was "on the merits;" and (3) the "ends of justice" would not be served by reaching the merits of the claim in the subsequent § 2255 Motion. *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963); *Molina v. Rison*, 886 F.2d 1124, 1127 (9th Cir.1989); *Polizzi v. United States*, 550 F.2d 1133, 1135 (9th Cir. 1976).

"[A] ground is successive if the basic thrust or 'gravamen' of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments." *Molina*, 886 F.2d at 1129 (citations omitted)

A prior determination is considered to have been made "on the merits" if the prior claim raised factual issues and either (1) the claim was denied on the basis that the files and records conclusively resolved the issues; or (2) an evidentiary hearing was held. *Sanders*, 373 U.S. at 16, 83 S.Ct. at 1077.

Even where the same ground has previously been rejected on the merits, the petitioner is entitled to a redetermination of the claim in the § 2255 proceeding where the "ends of justice" require it. *Id.* The "ends of justice" will require such a redetermination only where (1) there has been a change in the law; or (2) "manifest injustice" will result if the petitioner is not excused for failing to advance in the earlier proceedings the arguments sought to be made now. *Molina*, 886 F.2d at 1131; *Polizzi*, 550 F.2d at 1135.

### 2. Petitioner Has Not Made The Requisite Showing To Have His Claim Heard Anew

 Applying these principles to Petitioner's claim, it is clear that this Court does not have authority to consider his claim anew.

First, by saying that this Court erred by not determining how much methamphetamine Petitioner intended for personal use, Petitioner merely is advancing the same claim he argued to the Ninth Circuit. Petitioner has not even used new arguments to advance the same substantive claim. Thus, his claim is repetitive.

Second, the Ninth Circuit rejected Petitioner's claim "on the merits" because it examined the record in the case and determined that it conclusively resolved the issue. Specifically, the Ninth Circuit stated:

> [T]he jury rejected the lesser included offense of simple possession, and found Olmos guilty of possession with intent to distribute *all* of the methamphetamine; and the trial judge explicitly rejected this contention ..., declaring at sentencing that "the jury didn't accept that testimony [viz., that some of the drugs were for personal use], and I didn't accept it. It is an awful lot of drugs for personal use." The district court did not err by sentencing Olmos for possession with intent to distribute *all* of the methamphetamine seized.

*United States v. Olmos–Esparza*, No. 94–50324, 1995 WL 152141, at *1 (9th Cir. Apr.6, 1995) (emphasis added). Thus, the Ninth Circuit decided the issue on the merits, which ordinarily would preclude this Court from addressing it anew.

Nevertheless, this Court still can consider Petitioner's claim if the "ends of justice" require it. Here, the ends of justice do not require it because there has been no relevant change in the law. Also, Petitioner points to no reason to think that "manifest injustice" would result if he is not excused from failing to make the arguments before that he is

making now. Indeed, as noted above, Petitioner has not advanced any new arguments to support his claim.

In sum, the Ninth Circuit previously addressed Petitioner's claim that this Court erred by sentencing him based on the entire amount of drugs he possessed. The Ninth Circuit rejected Petitioner's claim on the merits, and the ends of justice do not require this Court to consider the matter anew. Accordingly, this Court is precluded from entertaining Petitioner's claim.

### C. Petitioner's Claim That The Sentencing Scheme For Methamphetamine Lacks A Rational Basis

 For his third main argument, Petitioner claims that the Sentencing Guidelines' treatment of methamphetamine lacks a rational basis, in violation of the Due Process Clause of the Fifth Amendment.[5]

To comprehend Petitioner's argument, it is necessary first to understand the various ways the United States Sentencing Guidelines treat methamphetamine. Section 2D1.1(c)(8) of the Guidelines in effect at the time of Petitioner's sentencing provided a base offense level of twenty-eight for possession of "[a]t least 400 G but less than 700 G of Methamphetamine, or at least 40 G but less than 70 G of Methamphetamine (actual) ...." U.S.S.G. § 2D1.1(c)(8) (Nov.1993).

The distinction between methamphetamine and methamphetamine (actual) is described in the footnote to section 2D1.1(c). The term "methamphetamine" includes "any mixture or substance containing a detectable amount" of methamphetamine. U.S.S.G. § 2D1.1(c)(n.*) (Nov.1993). "The term[ ] 'Methamphetamine (actual)' refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance." *Id.*

Petitioner correctly notes that the amount of methamphetamine (actual) required to trigger any particular base offense level is ten times less than the amount of metham-

**5.** Although Petitioner has not articulated this argument in constitutional terms, the Court construes pro se § 2255 Motions liberally. *Hamilton v. United States*, 67 F.3d 761, 764 (9th Cir. 1995) (citing *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980)). Also, even though Petitioner did not raise this issue in an earlier proceeding, the Court still can entertain the claim because it presents a constitutional issue. *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir.1994) (citing *Vandergrift v. United States*, 313 F.2d 93, 95 (9th Cir.1963)).

phetamine mixture required to trigger the same level. U.S.S.G. § 2D1.1(c)·(Nov.1993). Because the Guidelines direct that methamphetamine should be classified in the manner that will yield the greatest sentence, if a substance is less than ten percent pure methamphetamine the substance will be classified, using the entire weight of the substance, as "methamphetamine." However, if the substance is more than ten percent pure methamphetamine, it will be classified, using only the weight of the pure methamphetamine contained in the mixture, as "methamphetamine (actual)."

In light of this, Petitioner notes that the penalty an individual faces for possession of a methamphetamine mixture depends significantly on the purity of the mixture. For example, according to the Guidelines in effect at the time of Petitioner's sentencing, twenty grams of a mixture containing methamphetamine at a purity of nine percent would result in a base offense level of eighteen. *Id.* However, at a purity level of thirty percent, the twenty grams of the mixture would equate to six grams of methamphetamine (actual), with a corresponding base offense level of twenty-two. *Id.* At forty-five percent purity, the mixture would contain nine grams of methamphetamine (actual), with a corresponding base offense level of twenty-four. *Id.* Under this example, for an individual in criminal history category I, the sentence could vary from a low range of twenty-seven to thirty-three months, to a high range of fifty-one to sixty-three months, solely because of a variation in purity of thirty-six percent. A greater variation in purity would result in an even greater sentence variation. Because many possessors of methamphetamine may be unsure of the purity of their drugs, this sentencing scheme makes them

quite uncertain about the penalties they risk. For these reasons, Petitioner asserts that this sentencing scheme lacks a rational basis.

This contention fails. More severe punishment of methamphetamine (actual) is supported by a rational basis because the pure product is highly concentrated and can be formed into larger quantities for resale. *United States v. Turner,* 93 F.3d 276, 287 (7th Cir.1996) (citing *United States v. Bogusz,* 43 F.3d 82, 86–87 (3d Cir.1994), *cert. denied,* 514 U.S. 1090, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995)), *cert. denied,* —— U.S. ——, 117 S.Ct. 596, 136 L.Ed.2d 524 (1996). Methamphetamine typically contains a number of impurities that can be removed through further processing. *Id.* at 287. This purer product then can be resold. *Id.* Accordingly, the sentencing scheme for methamphetamine "punishes more severely the sophisticated [methamphetamine makers] who could otherwise manipulate the Guidelines by producing smaller quantities of more concentrated methamphetamine." *Bogusz,* 43 F.3d at 87.

■■■ In light of this, this Court cannot conclude that such a sentencing scheme lacks a rational basis. Accordingly, Petitioner's argument that the Sentencing Guidelines' treatment of methamphetamine is unconstitutional fails.[6] The Court therefore did not err by following the Guidelines.

### D. Petitioner's Claim That This Court Sentenced Him Based On More Methamphetamine (Actual) Than He Possessed

Petitioner's final argument is somewhat alternative to his constitutional argument. He argues that, even if the sentencing

---

6. As a corollary to his argument that the sentencing scheme lacks a rational basis, Petitioner argues that the Court erred by mathematically extracting the amount of methamphetamine (actual) from the mixtures in the bags seized from Petitioner. Petitioner argues that this approach, although facially permitted under the Guidelines, is not contemplated by the mandatory minimum sentence of 21 U.S.C. § 841(b)(1)(B) (viii). Although the Court could have sentenced Petitioner to the 120 months required by the statute, it instead imposed the longer sentence dictated by the Guidelines. Even so, the law specifically allows for such "extraction" under both sentenc-

ing schemes. U.S.S.G. § 2D1.1 (n.*) (Nov. 1993); *United States v. Byler,* 98 F.3d 391, 395 (8th Cir.1996) (construing the Guidelines); *see also Chapman v. United States,* 500 U.S. 453, 459, 111 S.Ct. 1919, 1924, 114 L.Ed.2d 524 (1991) (construing 21 U.S.C. § 841(b)(1)(A) (viii) to permit calculating the amount of pure methamphetamine in a mixture containing methamphetamine); *United States v. Alfeche,* 942 F.2d 697, 698–99 (9th Cir.1991) (per curiam) (same). Thus, the Court did not err by calculating the amount of pure methamphetamine contained in each bag and sentencing Petitioner based on those amounts.

scheme for methamphetamine is constitutional, the Court nevertheless sentenced him based on an inaccurate quantity of methamphetamine (actual). Specifically, Petitioner claims that this Court sentenced him for possessing 52.28 grams of pure methamphetamine, when he actually possessed 52.28 grams of methamphetamine *hydrochloride*. Petitioner argues that the hydrochloride is a mere carrier of methamphetamine, and thus should not have been included in calculating the weight of the methamphetamine (actual).

### 1. The Court Will Address The Merits Of Petitioner's Argument

■ Unlike Petitioner's previous arguments, it is not entirely clear whether he raised this issue at the sentencing hearing. Petitioner never explicitly argued that the amount of hydrochloride should not be included in the weight of methamphetamine for which he was sentenced. However, prior to sentencing, Petitioner filed a motion requesting that the drugs be reweighed, which the Court denied. Conceivably, this motion could be construed as a request to reweigh only the methamphetamine component of the methamphetamine hydrochloride.

Admittedly, this connection is attenuated at best. Absent any explicit reference to hydrochloride, it strains logic to say that Petitioner raised the issue. *See United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir.1995) (stating that "[a] challenge to an . . . offense level must be raised specifically . . . ."), *cert. denied,* —— U.S. ——, 116 S.Ct. 824, 133 L.Ed.2d 767 (1996). Nevertheless, the Court will construe all doubts in favor of Petitioner and address the merits of his claim.

### 2. The Court Properly Sentenced Petitioner For Possession of 52.28 Grams of Methamphetamine (Actual)

■ The Court sentenced Petitioner based on possession of 52.28 grams of methamphetamine (actual). The Court used this figure because of Mr. Goldberg's testimony about the contents of two of the bags seized from Petitioner. Mr. Goldberg testified that

one of the bags contained 6.041 grams of "D-methamphetamine hydrochloride at a [purity] of 99%," which means that "[t]he pure amount of methamphetamine in that net weight was 5.980 grams." (Trial Tr. at 106.) [7] Mr. Goldberg testified that the second bag contained 72.3 grams of "D-methamphetamine hydrochloride [at a purity of] 64%," which means that it contained 46.3 grams of "pure methamphetamine." (Trial Tr. at 108–09.) Summing the figures for "pure methamphetamine," the Court concluded that Petitioner possessed 52.28 grams of methamphetamine (actual) and sentenced him accordingly.

Petitioner argues that despite the fact that Mr. Goldberg described the 52.28 grams as "pure methamphetamine," that amount was in fact a mixture of methamphetamine and hydrochloride. Indeed, Mr. Goldberg testified that he found "D-methamphetamine hydrochloride." (*Id.* at 106, 108.) Although Petitioner has not stated this point explicitly, his argument embraces the proposition that Mr. Goldberg used the term "pure methamphetamine" as an inexact and overbroad synonym for "methamphetamine hydrochloride." Therefore, the argument runs, the Court sentenced Petitioner based on more methamphetamine (actual) than he in fact possessed.

This argument fails. Mr. Goldberg undoubtedly used the phrase "pure methamphetamine" synonymously with "methamphetamine hydrochloride" because the two phrases are in fact synonymous. Methamphetamine hydrochloride is a salt form of methamphetamine. *United States v. Pickrel,* 767 F.Supp. 1048, 1050 (D.Or.1990); (Frakes Decl. ¶ 5 (citing information provided by Mr. Goldberg)). In the Guidelines, "[a]ny reference to a particular controlled substance . . . includes all salts, isomers, and all salts of isomers." U.S.S.G. § 2D1.1, comment. (n.5) (Nov.1993). Thus, the Guidelines treat pure methamphetamine hydrochloride as methamphetamine (actual).

---

**7.** Petitioner also argues that the methamphetamine could not have been ninety-nine percent pure, because it is virtually impossible to create methamphetamine of that strength. Even if Petitioner had not procedurally defaulted on this argument, Mr. Goldberg's expert testimony re-

futes Petitioner's contention. Moreover, other cases make clear that ninety-nine percent pure methamphetamine is by no means unheard of. *E.g., Alfeche,* 942 F.2d at 698; *United States v. Young,* 862 F.2d 815, 818 (10th Cir.1989).

The weight of judicial authority confirms this analysis. Although few courts have addressed this issue explicitly, those that have indicate that under the Sentencing Guidelines, "methamphetamine (actual) refers to the net amount of methamphetamine hydrochloride...." *Bogusz*, 43 F.3d at 87; *see also Byler*, 98 F.3d at 395 (citing *Bogusz* and stating that to determine the quantity of "actual methamphetamine," a court must "multiply the purity level of the methamphetamine *compound* by its gross weight") (emphasis added); *Lambert*, 908 F.Supp. at 361 (explicitly equating "D–Methamphetamine" with "Dextro–Methamphetamine Hydrochloride"). In addition, although not addressing this issue expressly, the cases are legion that draw no distinction between methamphetamine (actual) and methamphetamine hydrochloride. *E.g., United States v. Williams*, 989 F.2d 1061, 1073 n. 5 (9th Cir.1993).

In sum, the Sentencing Guidelines treat pure methamphetamine hydrochloride as methamphetamine (actual). Thus, the Court did not err by sentencing Petitioner for possession of 52.28 grams of methamphetamine (actual).

### E. No Evidentiary Hearing Is Required.

A court need not hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir.1989), *cert. denied*, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989). This Court finds that an evidentiary hearing is unnecessary in the present matter because the records conclusively show that Petitioner is not entitled to relief.

### IV. Conclusion

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence is denied.

IT IS SO ORDERED: